## Norfolk

PAUL TOWNSEND DODGE

v.

GLORIA ANN DODGE

No. 0881-85

Decided May 6, 1986

COUNSEL

Gregory L. Sandler (Gordon & Brown, on brief), for appellant.

Kathleen Dring (Gilman P. Roberts, Jr.; Tidewater Legal Aid Society, on brief), for appellee.

OPINION

**BAKER, J.**—Paul Townsend Dodge (husband) appeals from a final decree which granted his wife, Gloria Ann Dodge (wife), a divorce *a vinculo matrimonii* on the dual grounds of husband's willful desertion and adultery, and which awarded wife $300 monthly spousal support.

On appeal, husband asserts that wife presented insufficient evidence to support the trial court's finding of his desertion and adultery. In addition, husband asserts that the spousal support award was excessive and was erroneously based solely on his fault, to the exclusion of other factors listed in Code § 20-107.1.

The parties married on January 6, 1976, in Portsmouth, Virginia, and thereafter resided together in the City of Chesapeake. One child, a daughter, was born of the marriage on August 11, 1981. The marriage developed problems and husband permanently departed from the martial home on March 19, 1983. On September 27, 1983, wife filed her bill of complaint in the Chesapeake Circuit Court asking that she be awarded a divorce based on desertion and adultery, spousal support, custody of the parties' daughter, child support, attorneys' fees and costs. Husband's answer denied the allegations of desertion and adultery, and requested dismissal of the suit with attorneys' fees and costs.

By decree entered on February 21, 1984, the trial court referred the cause to a commissioner in chancery, who conducted an *ore tenus* hearing on September 25, 1984. At the hearing each party testified and called witnesses in support of their respective claims.

The commissioner filed his report with the trial court on January 29, 1985. It contained extensive factual findings pertaining to jurisdiction and procedural requirements, the circumstances surrounding the parties' permanent separation, and their individual financial conditions. The report recommended, in relevant part, that wife receive a divorce based upon husband's willful desertion and adultery, and that husband pay $300 monthly spousal support to wife in addition to child support for their daughter.

Husband filed exceptions to those portions of the commissioner's report which recommended a divorce upon the ground of adultery, and as to the amount of spousal support. His exceptions were overruled by a decree in which the trial court "confirmed and ratified" the commissioner's entire report.

## I. DESERTION

■ The appellant failed to take exception to that portion of the commissioner's report which recommended that a divorce be granted to wife on the ground of husband's willful desertion as required by Code § 8.01-615. On appeal, objection comes too late.

> The rule is that the parts of a report not excepted to, are to be considered as admitted to be correct-both as regards the principles and the evidence upon which they are founded: otherwise the opposite party would be taken by surprise, and, in consequence thereof, injustice might be done. Exceptions partake of the nature of special demurrers, and hence, as the authorities say, the party excepting must "put his finger on the error," that the court may see what it has to decide. It is too later, however, to do so for the first time in the appellate court, unless the report be erroneous on its face.

*Cralle* v. *Cralle*, 84 Va. 198, 201, 6 S.E. 12, 13-14 (1887) (citations omitted). No error appears on the face of the report of the commissioner nor on the face of the decree of the trial court. Except as to such apparent errors, a report of a commissioner in chancery is *prima facie* correct. *Trotman* v. *Trotman*, 148 Va. 860, 867-68, 139 S.E. 490, 494 (1927).

> Under the well settled rule on the subject, the evidence in the cause cannot be looked to by us to ascertain whether the conclusion aforesaid of the Commissioner was sustained or not sustained by the evidence. On the face of the reports aforesaid no error is apparent in such conclusion. No exception having been taken by appellant in the court below, as aforesaid, it is too late for it to raise the objection in this court on appeal. The conclusion of the commissioner and the adjudication of the court, by the decree complained of based thereon, aforesaid, were, therefore, final and conclusive upon appellant and are not open to review in this court. Hence we cannot sustain the assignment of error of appellant.

*Id.* at 868, 139 S.E.2d at 492 (citations omitted). For the reasons stated we affirm the ruling of the trial court that the husband was guilty of desertion.

## II. ADULTERY

A judgment of the trial court will not be set aside on the ground that it is contrary to the evidence unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it. Code § 8.01-680. We must next decide whether there is evidence to support the commissioner's report and the adjudication contained in the decree of the trial court that adultery was committed by the husband. The trial court's decree is presumed correct; however, where the evidence is heard by a commissioner and not *ore tenus* by the trial court, the decree is not given the same weight as a jury verdict. *Hoffecker* v. *Hoffecker*, 200 Va. 119, 124, 104 S.E.2d 771, 774-75 (1958). If such decrees are supported by substantial, competent and credible evidence in depositions, they will not be overturned on appeal. *Capps* v. *Capps*, 216 Va. 382, 384, 219 S.E.2d 898, 899 (1975).

> While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence. *This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence*, but is not applicable to pure conclusions of law contained in the report. On appeal, a decree which approves a commissioner's report will be affirmed unless plainly wrong.

*Hill* v. *Hill*, 227 Va. 569, 576-77, 318 S.E.2d 292, 296 (1984) (emphasis added) (citations omitted).

Using these guidelines, we must determine whether the record contained sufficient competent and credible evidence to support the portion of the chancellor's decree which granted the wife a divorce on the ground of adultery. In making that determination, we are bound by further well established rules regarding proof of adultery as set forth in the Code and the controlling cases.

To establish a charge of adultery, the evidence must be clear, positive and convincing. *Painter* v. *Painter*, 215 Va. 418, 420, 211 S.E.2d 37, 38 (1975). Strongly suspicious circumstances are inadequate. *Id.* The divorce may not be awarded on the uncorroborated testimony of the parties. Additional admissible evidence must be produced independent of their admissions. *See* Code §§

20-99(2) and (3); *Raiford* v. *Raiford*, 193 Va. 221, 227-28, 68 S.E.2d 888, 892-93 (1952).

In this case, wife relied on statements—and the inferences therefrom—made by husband. In *Hampton* v. *Hampton*, 87 Va. 148, 12 S.E. 340 (1890), the court held that letters written by a party which contained adverse admissions should have been excluded from the evidence. The court there reasoned that the words used in the Code that "the cause shall be heard independently of the admissions of either party, in the pleadings or otherwise" bar the use of such admissions in a divorce hearing. *Id.* at 149, 12 S.E. at 340. In *Holt* v. *Holt*, 174 Va. 120, 5 S.E.2d 504 (1939), the court recognized the fallacy of that reasoning and pointed out that prior to the *Hampton* decision, letters containing admissions had been admitted. *Id.* at 130-31, 5 S.E.2d at 508-09; *see Bailey* v. *Bailey*, 62 Va. (21 Gratt.) 43, 49-51 (1871). In *Holt*, the court said that to the extent that *Hampton* excluded such admission "that case is hereby overruled." 174 Va. at 131, 5 S.E.2d at 509.

■ It is clear that a divorce may not be awarded on the uncorroborated admissions of the parties, but *Holt* holds that letters of a party which acknowledge that party's guilt "may be admitted in evidence in a suit for divorce (except where it is shown they were written by collusion for the purpose of obtaining a divorce) just as in any other case, for the purpose of proving, or as tending to prove facts pertinent to the question which the court is called upon to decide, to have precisely the same weight as in other cases." 174 Va. at 131, 5 S.E.2d at 509.

The statutes (20-97, 20-99) create many differences between suits for divorce and suits in equity. They provide (1) no person may maintain a suit for divorce unless one of the parties, at the beginning of the suit, is domiciled in, and is and has been an actual bona fide resident of the State for at least one year; (2) only an authorized officer may serve notice or process; (3) the bill shall not be taken for confessed, nor a divorce granted on the uncorroborated testimony of the parties, or either of them, and (4) whether the defendant answers or not the cause shall be heard independently of the admissions of either party in the pleadings or otherwise.

Commenting on this declared public policy, it was said in *Bailey* v. *Bailey*, 62 Va. (21 Gratt.) 43, 50:

*All that was intended by the (statute) \*\*\* was to put in the form of a statutory enactment, that principle which had been well settled by the ecclesiastical courts of England and the whole current of decisions of the courts of the States of the Union \*\*\* to wit, that a divorce would never be granted merely upon the consent, or on the default of the party charged, but only on proof of the cause alleged \*\*\**. This salutary rule was intended to prevent parties who were weary of the bond of matrimony, and impatient of its restraints and obligations, from obtaining the aid of the court through their own collusion and default. It was a rule for the protection of public morals and the sanctity of the marriage relations. These were the paramount objects of the rule, and these were the paramount objects of the statutes, enforcing a well settled rule of law.

*Raiford* v. *Raiford*, 193 Va. 221, 227-28, 68 S.E.2d 888, 892-93 (1952) (emphasis added).

A review of the transcript discloses that husband made statements to wife and to an independent witness from which it can be inferred that husband admitted to having sexual intercourse with a Mrs. Rebecca Nobles.

Wife testified that in November 1983, after the parties had separated, husband told wife that Mrs. Nobles was pregnant and that it was his baby. Later husband told wife that "he wasn't sure, that Mrs. Nobles was not supposed to be able to have children." During the previous summer (1983) husband told wife that "he had had a Mrs. Nobles living with him."

Roger N. McDaniel, who formerly worked with husband as a policeman on the City of Chesapeake police force, was called by wife to corroborate her testimony. He knew both husband and wife at the time of and during their marriage. McDaniel testified that after the parties separated husband resided in a trailer in a trailer park with Mrs. Nobles whom McDaniel knew. He further testified that husband told him that Mrs. Nobles was pregnant and admitted certainty that "it was his." In response to a question from the commissioner, McDaniel stated that he knew of his own knowledge that husband had been living with Mrs. Nobles since around the first part of 1984.

Husband testified that when he moved into the trailer there was a roommate he "had there at the time" whose name was Rebecca Nobles. He stated that they had separate bedrooms, that they shared the trailer for reasons of economy, and that when they later moved to a townhouse that living arrangement continued for the same reason of economy. Husband denied saying that Mrs. Nobles' pregnancy was caused by him or that he had had sexual intercourse with her.

■ Both the commissioner and the trial judge rejected husband's denial and held that evidence of the admission coupled with proof of the living arrangements were sufficient to support a charge of adultery. We now must decide whether the admission was corroborated. In doing so, we must not lose sight of the distinction between "confirmation" and "corroboration."

> The only question is whether there is sufficient corroboration of appellee's testimony to comply with the statute (sec. 20-99). The question of corroboration is one of fact, the decision of which in each case depends upon the particular facts of that particular case. It is not necessary that the testimony of the complaining spouse be corroborated on every element or essential charge stated as a ground for divorce. The corroborative testimony need not be sufficient, standing alone, to prove the alleged ground for divorce. Any other rule would deprive the testimony of the complaining spouse of any practical effect. *The general rule is that where a particular fact or circumstance is vital to complainant's case, some evidence of the same, in addition to the complainant's own testimony, is essential. The main object of the provision of the statute requiring corroboration is to prevent collusion. Where it is apparent that there is no collusion, the corroboration needs to be only slight.*

> Mr. Justice Eggleston, in *Forbes* v. *Forbes*, quoted with approval the following language of Mr. Justice Holt in *Martin* v. *Martin*, 166 Va. 109, 116, 184 S.E. 220: "*Corroboration* rests in the facts and circumstances of each case. Only those facts necessary to the judgment must be supported. *'Confirmation is not necessary for that removes all doubt, while corroboration only gives more strength than was had before.'* " *It need not rest in the testimony of witnesses but may be furnished by surrounding circumstances adequately*

*established.*

*Graves* v. *Graves*, 193 Va. 659, 661-62, 70 S.E.2d 339, 340-41 (1952) (emphasis added) (citations omitted).

It is clear that there was no collusion in this case and that the evidence disclosed an admission by husband that he had engaged in an adulterous affair with Mrs. Nobles. As was said by Mr. Justice Holt in *Martin* v. *Martin*, 166 Va. 109, 184 S.E. 220 (1936): "Can any man of common sense have doubt as to what their relations were during this period. We think not." *Id.* at 117, 184 S.E. at 224. When it is shown, as it was here, that husband and Mrs. Nobles for a period of months shared a trailer in a trailer park and later shared an apartment, the necessary corroboration was established. Separate bedrooms do not prevent parties from engaging in acts of sexual intercourse. Proof by husband that they maintained separate bedrooms in the trailer and apartment does not constitute a basis for holding that the commissioner, who heard the evidence *ore tenus* and observed the witnesses as they testified, under all the evidence presented, was wrong in his appraisal that adultery did in fact occur. The record contains substantial, competent and credible evidence to support the findings of adultery. We cannot say that the trial court was plainly wrong in approving the report of the commissioner and in awarding the divorce to the wife on the dual grounds of willful desertion and adultery.

### III. SPOUSAL SUPPORT

■ Code § 20-107.1 enumerates factors that must be considered by a court in determining whether and how much spousal support is appropriate in a given case. The trial court *must* consider each enumerated factor and failure to do so is reversible error. *Thomasson* v. *Thomasson*, 225 Va. 394, 398, 302 S.E.2d 63, 66 (1983); *Bristow* v. *Bristow*, 221 Va. 1, 3, 267 S.E.2d 89, 90 (1980). When a court awards spousal support based upon due consideration of the factors enumerated in Code § 20-107.1, as shown by the evidence, its determination "will not be disturbed except for a clear abuse of discretion." *Thomasson*, 225 Va. at 398, 302 S.E.2d at 66.

The commissioner's report noted, *inter alia*, that wife currently is an unemployed housewife with a high school education. She last

worked in 1981 as a cashier in a department store. Her unrebutted evidence showed monthly expenses of $694.76 for her and the parties' daughter.

In addition, the evidence revealed that wife possessed no income source other than court ordered support payments. Although she recently completed typing courses and sought employment utilizing that skill, she had not yet secured a job. In the past, her mother had provided baby-sitting services for wife's children at a very low cost; however, she is no longer able to perform that task.

The commissioner further noted husband's full time employment with the Chesapeake Fire Department, where he earns a monthly net income of $1,150. Husband claims monthly expenses of $1819.97. Although husband at one time generated income from part time jobs and crabbing, he maintained that these employments were no longer available to him.

Among his findings, the commissioner addressed the spousal support issue and stated initially "that inasmuch as the defendant is at fault, that the complainant is entitled to support." He thereafter concluded:

> As for the amount, the defendant's financial condition has to be considered, especially since his expenses would appear to exceed his income. However, your Commissioner is of the opinion the complainant should be awarded a sum of $300.00 a month as spousal support, which sum should be revised at such time as the financial condition of the parties change.

We find upon the review of this record that the commissioner and the trial court appropriately considered those factors mentioned in Code § 20-107.1. Nothing in this record indicates that the trial court failed to follow the statutory mandate. *See McGinnis* v. *McGinnis*, 1 Va.App. 272, 276, 338 S.E.2d 159, 161 (1985).

The fact that the commissioner's report specifically mentioned husband's fault is not supportive of husband's assertion that his fault constituted the sole basis of the award. Code § 20-107.1 *requires* the court to first determine whether the party seeking support is barred by marital fault which would entitle the other party to a divorce. *Thomasson*, 225 Va. at 398, 302 S.E.2d at 66.

Moreover, the magnitude of the evidence produced at the commissioner's hearing and the thoroughness of the commissioner's factual findings belie the contention that the trial court focused solely upon husband's fault in awarding spousal support to wife. On the contrary, it is clear that the trial court balanced the parties' financial and other needs and abilities and awarded wife monthly support in an appropriate amount. *See Lapidus* v. *Lapidus*, 226 Va. 575, 580, 311 S.E.2d 786, 789 (1984); *Jacobs* v. *Jacobs*, 219 Va. 993, 995, 254 S.E.2d 56, 57-58 (1979).

We find no abuse of discretion by the trial court in its determination of wife's entitlement to and the amount of spousal support.

Accordingly, finding no error in the judgment of the trial court, the June 4, 1985 final decree is affirmed.

*Affirmed.*

Barrow, J., and Hodges, J., concurred.