**Salem**

GERARDA WILHELMINA SCHOOS UNKEL
POMMERENKE

v.

ROGER LEE POMMERENKE

No. 0618-87-3

Decided October 4, 1988

COUNSEL

Harvey S. Lutins (Lutins & Shapiro, on brief), for appellant.

G. Marshall Mundy (Mundy, Rogers & Frith, on brief), for appellee.

OPINION

**KOONTZ, C.J.** — By decree entered on April 28, 1987, the trial court granted Roger Lee Pommerenke a final divorce from Gerarda Wilhelmina Schoos Unkel Pommerenke on the ground of adultery and a monetary award of $95,582. On appeal, Mrs. Pommerenke raises the following issues: (1) whether the evidence of adultery was sufficiently corroborated; and (2) whether the monetary award was equitable. Finding no reversible error, we affirm.

While some facts are contested, the facts essential to our decision are not significantly in dispute. Mr. Pommerenke met Mrs. Pommerenke in Holland and they were married on December 22, 1978. A son was born to this marriage. The parties experienced marital difficulties in October, 1984, and began occupying sepa-

rate bedrooms. During July, 1985, they vacationed together in Holland, at which time Mrs. Pommerenke met and had sexual intercourse with Dr. Hans VanWeel. Subsequently, VanWeel was an invited guest of the parties in their home in Roanoke County from approximately December, 1985 until April, 1986. During this period, Mr. Pommerenke came home from work on several occasions and discovered his wife and VanWeel "sunbathing." Mrs. Pommerenke was "topless" and VanWeel was in his "underwear." On another similar occasion, Mr. Pommerenke discovered his wife and VanWeel having an argument while VanWeel was nude.

Mrs. Pommerenke filed a bill of complaint on March 11, 1986, seeking a divorce on the ground of constructive desertion. Mr. Pommerenke filed an answer denying his desertion and a cross-bill alleging her desertion. The parties remained in the marital home. Subsequent to the filing of those pleadings, Mr. Pommerenke discovered a diary written by Mrs. Pommerenke, in which she wrote that she and VanWeel "became intimate" when she was in Holland in July, 1985. Mr. Pommerenke subsequently amended his cross-bill to include an allegation of adultery. At trial, Mrs. Pommerenke admitted having sexual intercourse with VanWeel in Holland in July, 1985. She denied any wrongdoing other than on that occasion.

## I.

■ We first consider Mrs. Pommerenke's contention that the evidence of adultery was not sufficiently corroborated. "Under familiar principles we view [the] evidence and all reasonable inferences in the light most favorable to the prevailing party below. Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Martin v. Pittsylvania Department of Social Services*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986).

Mrs. Pommerenke's contention concerning the sufficiency of the corroboration is rooted in Code § 20-99, which provides in pertinent part:

2. No divorce . . . shall be granted on the uncorroborated testimony of the parties or either of them.

3. Whether the defendant answers or not, the cause shall be heard independently of the admissions of either party in the pleadings or otherwise.

Mrs. Pommerenke contends that the only evidence of her adultery comes from her admission under oath at trial, the admission in her diary, and the testimony of the parties. Thus, she maintains there is no corroboration as required under Code § 20-99. We believe Mrs. Pommerenke's contention fails to distinguish evidence sufficient to prove adultery where the offending spouse denies it from evidence sufficient to corroborate an admission of adultery under oath by the offending spouse. The reason for the requirement of corroboration under Code § 20-99 clarifies this distinction.

■ "The main object of the provision of the statute requiring corroboration is to prevent collusion. Where it is apparent that there is no collusion, the corroboration needs to be only slight." *Collier v. Collier*, 2 Va. App. 125, 128, 341 S.E.2d 827, 828 (1986). In this case it is readily apparent that collusion is not present. Mr. Pommerenke did not discover and did not assert adultery until after the parties had separately filed suit for divorce on other grounds. Furthermore, we can perceive of no reason to conclude that Mrs. Pommerenke would desire to collude with Mr. Pommerenke to permit him to obtain a divorce upon grounds that would preclude her right to spousal support under the provisions of Code § 20-107.1, that were in effect at that time. Such a conclusion would strain logic. Accordingly, having determined that collusion is not present, we review the evidence to determine whether slight corroboration of adultery exists.

■ " 'The question of corroboration is one of fact, the decision of which in each case depends upon the peculiar facts of that particular case . . . . The corroborative testimony need not be sufficient, standing alone, to prove the alleged ground for divorce.' " *Martin v. Martin*, 202 Va. 769, 774, 120 S.E.2d 471, 474 (1961)(quoting *Graves v. Graves*, 193 Va. 659, 661, 70 S.E.2d 339, 340 (1952)). "[Corroboration] need not rest in the testimony of the witnesses but may be furnished by surrounding circumstances adequately established." *Dodge v. Dodge*, 2 Va. App. 238, 245-46, 343 S.E.2d 363, 367 (1986)(citation omitted)(emphasis omitted).

These principles, when viewed in the context of preventing collusion to obtain a divorce, suggest a common sense approach to determining the sufficiency of the corroboration required to establish grounds for divorce. Judge Baker, writing for this Court in *Dodge*, implicitly referred to such a common sense approach to determining the sufficiency of the corroborative evidence when he selected the following quotation from *Martin v. Martin*, 166 Va. 109, 117, 184 S.E. 220, 224 (1936): "Can any man of common sense have doubt as to what their relations were during this period. We think not." *Dodge*, 2 Va. App. at 246, 343 S.E.2d at 367.

In the present case, common sense leaves no doubt what Mrs. Pommerenke's relationship with Van Weel was in July, 1985. In addition to Mrs. Pommerenke's sworn admission of adultery at the *ore tenus* hearing, the surrounding circumstances adequately establish the necessary proof of her adultery.

The fact that the diary was written to record a current event at a time when Mr. Pommerenke was unaware of the conduct of Mrs. Pommerenke establishes that it was not written for the collusive purpose of obtaining a divorce. Consequently, under the holding of *Holt v. Holt*, 174 Va. 120, 5 S.E.2d 502 (1939), it was admissible. The fact that Mrs. Pommerenke recorded the words "became intimate" speaks as loudly of her adultery as her subsequent sworn admission.

In addition, the presence of VanWeel and his conduct at the Pommerenke home shortly after the incident in Holland tends to prove a sexually intimate relationship between Mrs. Pommerenke and him. Mrs. Pommerenke, a Dutchwoman, asserts that her sunbathing "topless" was a custom practiced without objection or notice in foreign countries, such as Holland, and we assume this to be true. We do not assume, however, such a practice would be customary in one's home in the presence of an invited guest. Nevertheless, regardless of Mrs. Pommerenke's practice of sunbathing "topless," we know of no custom that would explain VanWeel's presumption that he could feel free to be in his "underwear" or nude in the presence of his host's wife and in the absence of his host. Rather, we believe this conduct is further evidence that the relationship between Mrs. Pommerenke and VanWeel was adulterous.

Grace Wold, an independent witness, confirmed VanWeel's extended presence in the Pommerenke home. Viewed in the context that no collusion to obtain a divorce existed, and coupled with Mrs. Pommerenke's sworn admission of adultery, the evidence of that adultery from the diary and the presence and conduct of VanWeel in the marital home, the evidence introduced through this witness is sufficient corroboration of that adultery. The evidence, viewed in a common sense manner, left the chancellor with no doubt of the relationship between the parties in July, 1985; we also have no doubt. The chancellor's finding is not plainly wrong and is supported by the evidence. Accordingly, we will not disturb it on appeal.

## II.

We now consider Mrs. Pommerenke's contention that the monetary award was not equitable. The trial court heard evidence *ore tenus* concerning the separate and marital property of the parties. In addition to the monetary award granted to Mr. Pommerenke, the court ordered that certain marital property be divided equally between the parties, and that Mrs. Pommerenke receive $150 per month from Mr. Pommerenke's retirement plan upon his retirement at age sixty-five.[1] The evidence supports the court's finding that the jointly owned marital home had a fair market value of $125,000, subject to a deed of trust of $15,000, and that the parties' resulting equity was valued at $110,000. Based on the evidence, the court ruled that "since [Mr. Pommerenke] paid the down payment" on this home with his premarital savings of $95,582, he would be awarded a monetary award in that amount. On appeal, Mrs. Pommerenke argues that because the court's ruling resulted in an award of $102,500 to Mr. Pommerenke and only $7,500 to her from the value of the marital home, the court has given "extraordinary consideration" to the offending act of the wife. In effect, she argues, the court has punished her for her adultery. We disagree.

---

[1] Mrs. Pommerenke does not challenge the validity of the court's ordered division of the marital property pursuant to Code § 20-107.3(C), in effect at that time. This Code section was amended in 1988, subsequent to these proceedings, to permit the court to "order the division or transfer, or both, of jointly owned marital property, or any part thereof."

■ "With the enactment of Code § 20-107.3 in 1982, the Virginia General Assembly authorized the divorce courts of this Commonwealth, applying specifically enumerated factors, to reach an equitable resolution of the issue of the division of the jointly acquired wealth of the spouses during their marriage." *Rexrode v. Rexrode*, 1 Va. App. 385, 394, 339 S.E.2d 544, 549 (1986). The court must follow all of the provisions of Code § 20-107.3 in making a monetary award or the award is invalid. *See, e.g., Brinkley v. Brinkley*, 5 Va. App. 132, 136, 361 S.E.2d 139, 140 (1987); *Clayberg v. Clayberg*, 4 Va. App. 218, 222, 355 S.E.2d 902, 904 (1987).

■ Because the specific issue raised by Mrs. Pommerenke involves the recurring general issue of the proper application of the eleven factors enumerated in Code § 20-107.3(E), we take this opportunity to address both issues. Subsequent to the trial court's decision in this case, the Virginia Supreme Court rendered its decision in *Smoot v. Smoot*, 233 Va. 435, 357 S.E.2d 728 (1987). In *Smoot*, the husband contributed $20,000 from a premarital personal injury settlement toward the construction of a home on the parties' jointly owned property. The Supreme Court held that Code § 20-107.3 does not adopt the "source of funds doctrine," applicable in other states, and "Code § 20-107.3 contemplates only two kinds of property — marital and separate property, each expressly defined." *Id.* at 439-40, 357 S.E.2d at 730-31. The Court further held that where a spouse fails to separate and instead commingles separate property with marital property, the chancellor must classify the commingled property as marital property under the doctrine of "transmutation." The Supreme Court then affirmed the chancellor's award of $20,000 based on consideration of the factors listed in Code § 20-107.3(E).

■ Under the facts of *Smoot*, the husband, as in the present case, received a monetary award equal to his down payment on the construction of the marital home that came from his separate property. However, we do not interpret *Smoot* as authority for the proposition that the statutory scheme embodied in Code § 20-107.3 *mandates* that a spouse receive a monetary award equal to the down payment for the purchase or construction of a marital home when the down payment comes from that spouse's separate property. Rather, in *Smoot*, the Court carefully distinguished between *classification of property* as marital or separate and the *de-*

*termination of the amount of a monetary award* based on that property classified as marital. Because the statutory guidelines for determining the amount of the monetary award were considered and followed, the Court found that the chancellor had not abused his discretion, on the facts of that case, in awarding an amount equal to the husband's contribution to the construction of the marital home. In *Bentz v. Bentz*, 2 Va. App. 486, 345 S.E.2d 773 (1986), decided prior to *Smoot*, we held that "[w]hile the court in considering a monetary award is required to take into account the source of funds used in the acquisition of marital property [Code § 20-107.3(E)(2)], this factor is to be balanced against all other factors, including both monetary and nonmonetary contributions from the other party to the well-being of the family during the marriage." *Id.* at 489, 345 S.E.2d at 774-75.

██ We believe *Smoot* and *Bentz*, properly interpreted, stand for the proposition that the court must consider and balance all of the factors contained in Code § 20-107.3(E) in determining the amount of the monetary award. These cases do not mandate that, in determining the amount of a monetary award, the court must fashion an award so as to reimburse down payments for the purchase or construction of a marital home (or other marital property) made from separate property. Rather, separate property used for a down payment, commingled with marital property, and thus transmuted into marital property becomes a part of the pool of marital property upon which the factors of Code § 20-107.3(E) must be applied. In applying those factors, the court does not abuse its discretion by making an award that restores the down payment to the contributing spouse, if the court finds that equity dictates such a result upon consideration of all the factors of Code § 20-107.3(E). While in many cases the equitable result may be the same, the restoration of a down payment made from separate property based on the application of the eleven factors of Code § 20-107.3(E), rather than the automatic restoration of such down payment, constitutes the proper application of the statute and ensures the ability of the courts to fashion an equitable distribution of the accumulated wealth of the marital partnership consistent with the equities of a given case.

██ In *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830 (1986), we held that in making a monetary award there is no statutory presumption of equal distribution of marital prop-

erty. We recognize, however, that the trial courts cannot and should not apply the provisions of Code § 20-107.3(E) in a vacuum. *Papuchis* did not attempt to address the practical application of this Code section, which necessarily requires trial courts to adopt some beginning point in their determination of the weight to be given the eleven factors they are required to consider. It is apparent from the record in the present case that, based on the evidence presented, the trial court adopted an initial assumption that the equities and rights and interests of each party in the marital property were equal as its beginning point in that determination. In the context of a marital partnership, an initial assumption of equality is reasonable. When used only as a beginning point in the trial court's required determination of the weight to be given the eleven factors of Code § 20-107.3(E), it is not inconsistent with *Papuchis*. This approach permitted the trial court to meaningfully balance those factors as directed by *Smoot* and *Bentz* rather than mechanically considering them without considering how they affect the equities of the parties in the accumulated marital wealth. Moreover, this approach was within the trial court's discretion and preserved its ability to fashion an equitable distribution award consistent with the equities of the case.

In the present case, the record supports the conclusion that the trial court considered the evidence relating to all of the factors enumerated in Code § 20-107.3(E), with the exception of "the tax consequences to each party." The parties assert no issue with regard to tax consequences, and we believe if error was committed, it was harmless when considered in the totality of the factual considerations of this case.

■ In *Woolley v. Woolley*, 3 Va. App. 337, 349 S.E.2d 422 (1986), when addressing the application of the factors enumerated in Code § 20-107.1 concerning spousal support, we said:

The requirement that the trial court consider all of the statutory factors necessarily implies substantive consideration of the evidence presented as it relates to all of these factors. This does not mean that the trial court is required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. It does mean, however, that the court's findings must have some foundation based on the evidence presented. Therefore, . . . if the court's findings

do not have evidentiary support in the record, then the court has abused its discretion.

*Id.* at 345, 349 S.E.2d at 426. We hold that this standard is equally applicable to a determination involving the application of Code § 20-107.3.

Mrs. Pommerenke argues that in determining the amount of the award and in effect restoring the down payment to Mr. Pommerenke, the trial court gave "extraordinary consideration" to Code § 20-107.3(E)(5), which provides that "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce . . ." are to be considered when determining the amount of an award. Viewing the totality of the evidence as it relates to the other factors in Code § 20-107.3(E), we would be required to speculate to assign merit to this argument. The trial court in fashioning the monetary award certainly did not state that it was influenced by or attributed any particular weight to the fact that it found Mrs. Pommerenke guilty of adultery. More important, its equal division of the marital property, with the exception of the restoration of Mr. Pommerenke's down payment on the marital home, was within the sound discretion of the trial court. While there is no hierarchy of the factors in Code § 20-107.3(E), under the facts of this case the trial court did not err in making the monetary award which reflected the greater contribution of Mr. Pommerenke in the acquisition of the marital property. Other than what Mr. Pommerenke brought into the marriage, the property was divided equally, and Mrs. Pommerenke produced no evidence that her contributions, monetary or nonmonetary, or any other factor under Code § 20-107.3(E) should have equitably required a different disposition of the marital wealth of the parties. Accordingly, the decision of the trial court is affirmed.

*Affirmed.*

Coleman, J., and Moon, J., concurred.