COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Bumgardner and Kelsey
Argued at Alexandria, Virginia


GREGORY SHAFFER

MEMORANDUM OPINION[*] BY
v. Record No. 3329-02-4 JUDGE D. ARTHUR KELSEY
JULY 29, 2003
LINDA SHAFFER


FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Ann Hunter Simpson, Judge

Stephen D. Quatannens for appellant.

Lawrence D. Diehl for appellee.


Asserting twenty-nine assignments of error, Gregory Shaffer
challenges the grounds upon which the trial court granted his
wife a divorce, the award of sole legal custody of his children
to his wife, the award of spousal and child support, the
equitable distribution award, and the award to his wife of
attorney's fees incurred in the trial court.

The chancellor addressed each of these issues in a
comprehensive letter opinion. Finding no error in the trial
court's analysis or its holdings, we affirm. Because many of
husband's arguments have little or no legal merit, we grant
wife's request for attorney's fees on appeal and remand this

---

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

matter to the trial court to review the reasonableness of her requested amount.

                                    I.

When reviewing a chancellor's decision on appeal, we view the evidence in the light most favorable to the prevailing party, granting her the benefit of any reasonable inferences. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003).  "That principle requires us to discard the evidence of the appellant which conflicts, either directly or inferentially, with the evidence presented by the appellee at trial."  Id. (citations and internal quotations omitted).

Gregory ("husband") and Linda Shaffer ("wife") married on September 30, 1989.  The couple had two daughters, born in 1991 and 1994.  Wife quit her job as a sales manager after she and husband agreed that she would be a stay-home mother and the "primary caretaker for the children."

In 1993, upon returning from a business trip to Ohio, husband admitted to wife that he had been "in bed" with a woman he met in a bar.  Husband denied, however, having intercourse with the woman.  Husband also promised never again to be unfaithful.  Wife forgave husband, but made clear to him that "the marriage would not survive another incident of infidelity."

In 1995, husband accepted a new job that involved extensive domestic and international travel.  "He was hardly ever home,"

-

wife recalled.  During this period, wife maintained the household and raised the children.

After returning from a trip in March 2000, husband announced that he did not "know if I want to be married anymore, marriage is boring."  To liven the relationship, husband suggested, the couple should "go out to bars and go dancing and get drunk."  Husband also complained that wife did not do enough to stimulate him sexually or to "keep things exciting."  Hearing this news, wife felt emotionally "devastated."

Husband left on another trip, this time to Pakistan.  After his return, husband admitted that he had "committed adultery" with numerous women for a "long time."  Included in his indiscretions were sexual relations with "a nurse," "a patient," "another nurse," and, when on trips, at least four women he met in bars.[1]  In later conversations, husband also confessed to at least "three or four" of the affairs to Nancy Pcsolyar, a neighbor, and also admitted his infidelity to Rev. Ronald Melton.

In addition, husband told wife that he had never used a condom or any other type of protection to guard against the transmission of sexually-transmitted diseases to wife, with whom he was also sexually active during the period of his adulteries.

---

[1] In his appeal brief, husband admits that "the parties had a conversation in which Mr. Shaffer informed his wife that he had had sexual intercourse with other women since 1993."

-

"Totally numb" upon hearing this news, wife felt like her "entire life ha[d] been turned upside down." She particularly feared for her health, given the risk of contracting a sexually transmitted disease from her promiscuous husband. Wife stood by "in a state of shock" as husband then packed his belongings and moved out of the home.

A few months later, husband asked if wife would forgive him and consent to him moving back into the marital home. Wife asked him directly if he would "give up his adulterous lifestyle." Husband said he would not. Under such circumstances, wife testified, she would not agree to condone husband's infidelities and to resume cohabitation with him.

During the period of separation, husband continued to display aberrant behavior. He broke into wife's car while she was at a restaurant and, after initially denying that he did so, admitted tearing pages out of wife's journals left in her car. He also entered the home while wife was away and placed items of lingerie on wife's bed — which wife interpreted as a mocking and offensive gesture.

Husband also treated his young children poorly. "Many times," wife testified, he yelled at her in front of the children, including one episode where he called her "an F'ing B" in their presence. In addition, despite a court order forbidding him from doing so, husband exposed his young

-

daughters to his girlfriend —— resulting in a contempt of court conviction.  And on two occasions, husband forfeited his opportunity for visitation with his daughters so he could vacation with a paramour.

The trial court awarded wife a divorce based on husband's cruelty and constructive desertion.  The chancellor also awarded wife sole legal and physical custody of the children, spousal support at $2,000 a month, and child support at $824.52 a month. In the equitable distribution award, the chancellor transferred the marital home to wife and allowed husband to retain substantial funds within his retirement accounts.  Husband filed forty-nine exceptions to the final decree.

## II.

Rule 5A:20(e) requires the appellant's brief to include, among other things, the "principles of law, the argument, and the authorities relating to each question presented." Statements unsupported by "argument, authority, or citations to the record" do not merit appellate consideration.  Thomas v. Commonwealth, 38 Va. App. 319, 321 n.1, 563 S.E.2d 406, 407 n.1 (2002); Dickerson v. Commonwealth, 36 Va. App. 8, 15, 548 S.E.2d 230, 234 (2001); Bennett v. Commonwealth, 35 Va. App. 442, 452, 546 S.E.2d 209, 213 (2001); Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).

-

Husband asserts on appeal twenty-nine assignments of error. On questions 6, 9, 10, 11, 12, 13, 14, 19, 20, 21, 22, 23, 24, 25, 26, 27, and 28, husband's brief provides inadequate citation either to the record or to supporting principles of law. Instead, on these points, husband's brief addresses the subject in a cursory, perfunctory manner. Rule 5A:20(e) precludes our review of these issues in the face of such an inadequate attempt at appellate advocacy.

### III.

### A.

On the issues that remain, we begin our analysis by restating basic principles governing the standard of appellate review — a subject that intersects nearly every argument husband makes in this appeal.

"Under Code § 8.01-680, a factual determination cannot be reversed on appeal unless 'plainly wrong or without evidence to support it.'" Congdon, 40 Va. App. at 261, 578 S.E.2d at 836 (citation omitted); Torian v. Torian, 38 Va. App. 167, 181, 562 S.E.2d 355, 362 (2002). This standard applies to a trial court's decision regarding divorce, Hughes v. Hughes, 33 Va. App. 141, 145-46, 531 S.E.2d 645, 647 (2000), child custody and visitation, Albert v. Albert, 38 Va. App. 284, 294, 563 S.E.2d 389, 394 (2002), spousal support, Congdon, 40 Va. App. at 261, 578 S.E.2d at 836, child support, Joynes v. Payne, 36

-

Va. App. 401, 424, 551 S.E.2d 10, 21 (2001), equitable distribution, Thomas v. Thomas, 40 Va. App. 639, 644, 580 S.E.2d 503, 505 (2003), and attorney's fees, Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002).  Under this standard, we do not "retry the facts or substitute our view of the facts for those of the trial court."  Congdon, 40 Va. App. at 266, 578 S.E.2d at 838 (citation omitted).

Moreover, we will overturn a decision committed to the chancellor's sound discretion only upon a showing that she abused that discretion.  An abuse of discretion can be found if the trial court uses "an improper legal standard in exercising its discretionary function" or fails "to consider the statutory factors required to be part of the decisionmaking process."  Id. (citation and internal quotation marks omitted).

### B.

Husband challenges the grounds upon which the chancellor granted wife a final divorce.  The trial court erred, husband argues, by finding him guilty of cruelty and constructive desertion and by not finding wife guilty of desertion in "barring Mr. Shaffer's return to the residence" after he decided he wanted to come home.  In the alternative, husband contends that the trial court should have granted the divorce on no-fault grounds pursuant to Code § 20-91(9)(a).  We disagree with each of these assertions.

-

Cruelty consists of "anything that tends to bodily harm and thus renders cohabitation unsafe" or "involves danger of life, limb or health."  Zinkhan v. Zinkhan, 2 Va. App. 200, 208, 342 S.E.2d 658, 662 (1986) (quoting Latham v. Latham, 71 Va. (30 Gratt.) 307, 320-22 (1878)).  Constructive desertion occurs "where the conduct of the other spouse has caused conditions in the marital home to be intolerable" to the point that the affected spouse has to leave.  Gottlieb v. Gottlieb, 19 Va. App. 77, 82, 448 S.E.2d 666, 669 (1994) (quoting Kerr v. Kerr, 6 Va. App. 620, 623, 371 S.E.2d 30, 32 (1988)).

The chancellor did not plainly err in finding husband guilty of cruelty and constructive desertion.  By engaging in sexual intercourse with multiple paramours without any form of protection against sexually transmitted diseases, and then continuing to have sex with his unsuspecting wife, husband rendered "cohabitation unsafe" for cruelty purposes, Zinkhan, 2 Va. App. at 208, 342 S.E.2d at 662 (citation omitted), and palpably "intolerable" for constructive desertion purposes, Gottlieb, 19 Va. App. at 82, 448 S.E.2d at 669 (citation omitted).  To deny wife a divorce on this ground would be tantamount to placing upon her the legal duty to remain married (subject to conjugal obligations) to a man who, through numerous adulteries, put her at risk of sexually-contracted diseases and whose behavior —— based on his own admission —— strongly

-

suggested he would continue to do so in the future.  Knowingly placing a spouse at risk of an HIV infection or some other sexual contagion is a cruelty the law does not require the innocent spouse to tolerate.

We also find meritless husband's assertion that his sexual infidelities "were not proven sufficiently by the evidence." Under oath before the commissioner, husband admitted confessing to wife that he "had sexual relations with other women during [the] marriage."  Wife provided further details about her husband's confession, including that they had been going on "for a long time" and with many sexual partners.  Husband's admissions to his neighbor and his pastor likewise corroborate wife's testimony.  The evidence, therefore, provides ample support for the predicate finding of adultery underlying the chancellor's cruelty and constructive desertion holding.  <u>See</u>, <u>e.g.</u>, <u>Watts v. Watts</u>, 40 Va. App. 685, 689-90, 581 S.E.2d 224, 226-27 (2003) (surveying cases addressing sufficiency of the evidence proving adultery).[2]

_____

[2] We also reject husband's assertion that his various admissions used to support the cruelty and constructive desertion grounds were not corroborated by other evidence in the case.  Husband's contention "fails to distinguish evidence sufficient to prove adultery where the offending spouse denies it from evidence sufficient to corroborate an admission of adultery under oath by the offending spouse."  <u>Pommerenke v. Pommerenke</u>, 7 Va. App. 241, 245, 372 S.E.2d 630, 632 (1988).  Where, as here, an admission under oath occurs, only "slight corroboration of adultery" is necessary.  <u>Id.</u>  Husband's admissions to Nancy Pcsolyar of "three or four" adulterous

-

For similar reasons, the chancellor did not err in refusing to find wife guilty of desertion because she refused husband's request for cohabitation after he left the marital home. Actual desertion requires both an "actual breaking off of the marital cohabitation" and an "intent to desert in the mind of the offender." Gottlieb, 19 Va. App. at 83, 448 S.E.2d at 670. Wife's refusal to continue cohabitation with husband after her discovery of his conduct —— coupled with her credible belief that he would not change and, to be sure, his announced refusal to change —— does not constitute desertion. That is particularly true given the chancellor's finding of cruelty and constructive desertion on husband's part. See, e.g., Seemann v. Seemann, 233 Va. 290, 296, 355 S.E.2d 884, 888 (1987) ("Even if [husband's] conduct did not amount to cruelty, the trial court properly could conclude that his conduct was the 'provoking cause' for her leaving the home."); Gottlieb, 19 Va. App. at 83, 448 S.E.2d at 670 ("Wife's evidence proved that she left the

_____

affairs meets this slight burden. Moreover, every "element or essential charge need not be corroborated, nor must the corroborating evidence, standing alone, prove the grounds for divorce, but corroboration must give sufficient strength to the complainant's testimony to be clearly worthy of belief." Bchara v. Bchara, 38 Va. App. 302, 312, 563 S.E.2d 398, 403 (2002) (quoting Emrich v. Emrich, 9 Va. App. 288, 296, 387 S.E.2d 274, 278 (1989)).

-

marital home because she reasonably believed her health was endangered by remaining, and she unsuccessfully tried less drastic measures to eliminate the danger.").  Reasons to refuse cohabitation "other than an intent to desert may justify discontinuance of the relationship without giving rise to grounds for divorce."  D'Auria v. D'Auria, 1 Va. App. 455, 459, 340 S.E.2d 164, 166 (1986).[3]

We also disagree that husband had a right to a divorce on no-fault grounds.  In cases "where a court has a choice between a cause of action for a 'no fault' divorce and a cause seeking to fix fault," nothing in Virginia law states that "the cause without fault to either party should be chosen."  Robertson v. Robertson, 215 Va. 425, 426, 211 S.E.2d 41, 43 (1975).  Virginia law does not require courts to "give precedence" to no-fault grounds over fault grounds.  Id.  Instead, when a trial court faces "dual or multiple grounds for divorce," it can exercise its own discretion in selecting the ground upon which to grant the divorce.  Sargent v. Sargent, 20 Va. App. 694, 707, 460 S.E.2d 596, 602 (1995).  In our case, therefore, while the

---

[3] See, e.g., Breschel v. Breschel, 221 Va. 208, 212, 269 S.E.2d 363, 366 (1980) (concluding that wife who left because she reasonably believed continued cohabitation endangered her health was free from legal fault); Capps v. Capps, 216 Va. 382, 385, 219 S.E.2d 898, 900 (1975) (recognizing that wife, who left the marital home after a single act of physical abuse, was free from legal fault even though husband's abuse did not amount to cruelty as a fault ground).

-

chancellor could have granted a divorce based on a one-year separation, see Bchara v. Bchara, 38 Va. App. 302, 310, 563 S.E.2d 398, 402 (2002), she also had the discretion not to.

C.

Husband next challenges the chancellor's decision to award sole legal custody to wife. Finding that the trial court properly exercised its statutory authority, we affirm.

Code § 20-124.3 lists various factors the trial court must consider in making custody and visitation decisions. See generally Joynes, 36 Va. App. at 416, 551 S.E.2d at 17. Though the trial court must consider each factor, "it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Sullivan v. Knick, 38 Va. App. 773, 783, 568 S.E.2d 430, 435 (2002) (quoting Sargent, 20 Va. App. at 702, 460 S.E.2d at 599). So long as the chancellor considers the statutory factors, we will not reverse her decision absent an abuse of discretion. Id.

In this case, the chancellor found that husband displayed an "inability to accurately assess the emotional needs of the children." After announcing to the children that "he did not want to be married to their mother any more," husband did little to address their emotionally "hysterical" reaction. He only made things worse by calling their mother a "F'ing B" in their presence, declining visitation with them so he could vacation

-

with his latest paramour, and contemptuously violating a court order forbidding him from exposing his children to his paramours. Given the wife's history of faithful parenting and husband's history of placing his own interests ahead of his children's, the chancellor did not abuse her discretion by finding that the best interests of the children favored an award of sole legal custody to wife.

### D.

Husband's disagreement with the trial court's decision to award spousal support can be grouped into two categories.[4] The first involves a challenge to the trial court's "assessment and application of factors pursuant to § 20-107.1 in awarding complainant spousal support." The second challenges the trial court's refusal, at husband's insistence, to impute income to wife on the ground that she was voluntarily underemployed. We find no merit in either contention.

---

[4] Husband waived arguments regarding spousal support asserting that the trial court erred: (i) by "allowing the introduction of opinion evidence of Larry Stone," who testified regarding wife's earning potential in her business; (ii) in its "findings as to complainant's income"; (iii) by not "awarding spousal support for a limited term of years"; (iv) by not "adequately considering the ability or inability" of husband to pay the award; (v) by "failing to note the unnecessary and inflated nature" of wife's expenditures; (vi) for "not modifying the spousal support and child support awards after the court significantly revised" wife's income; and (vii) by allowing its error in spousal support determination to carry over into its child support determination. See Rule 5A:20(e).

-

Following the dissolution of a marriage, the trial court "may make such further decree as it shall deem expedient concerning the maintenance and support of the spouses."  Code § 20-107.1(A).  Crafting an appropriate award requires the chancellor to consider the factors outlined in Code § 20-107.1(E).  See Wright v. Wright, 38 Va. App. 394, 404, 564 S.E.2d 702, 707 (2002).  "Whether and how much spousal support will be awarded is a matter of discretion for the trial court."  Congdon, 40 Va. App. at 262, 578 S.E.2d at 836 (quoting Northcutt, 39 Va. App. at 196, 571 S.E.2d at 914).  Thus, "in fixing spousal support, a trial court has broad discretion which should not be interfered with by an appellate court unless it is clear that some injustice has been done."  Joynes, 36 Va. App. at 423, 551 S.E.2d at 21 (citation omitted).

In this case, the evidence showed a disparity in earnings between the wife and husband.  In addition, wife's going-forward expenses now include the mortgage and other financial responsibilities of home ownership, while husband's on-going living expenses are being defrayed by his live-in girlfriend.  The chancellor also took into account wife's legitimate interest in the "high standard of living" she had enjoyed during the marriage.  Each of these findings corresponds to various statutory factors listed in Code § 20-107.1.  We find no abuse of discretion in this reasoning.

-

We also disagree that the chancellor erred in not imputing income to wife because of her alleged underemployment. Imputation of income requires proof that "the other parent was voluntarily foregoing more gainful employment, either by producing evidence of a higher-paying former job or by showing that more lucrative work was currently available." Mir v. Mir, 39 Va. App. 119, 128, 571 S.E.2d 299, 304 (2002). The burden of proof rests on the party asserting the imputation. Albert, 38 Va. App. at 295, 563 S.E.2d at 395. "The evidence must be sufficient to 'enable the trial judge reasonably to project what amount could be anticipated.'" Id. (quoting Hur v. Va. Dept. of Soc. Servs. Div. of Child Support Enforcement ex rel. Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991)).

The chancellor did not plainly err in finding that husband failed to carry the burden of persuasion on this issue. The chancellor found husband's evidence speculative and accepted wife's testimony that her business, a portrait studio, faced a potentially bright future. Nor did any evidence refute wife's belief that her flexible self-employment allowed her to "schedule her business appointments around her children's schedules" and thus provide much needed "regularity and stability" to her still-emotionally fragile children. For these reasons, the chancellor did not plainly err in finding that husband did not carry his burden of proof on this issue.

-

E.

Husband also argues that the trial court "erred in the assessment and application of factors pursuant to § 20-108.1 in awarding complainant $824.52 in monthly child support."[5]  He again argues that the chancellor erred by not imputing income to wife, a contention we reject.  Beyond that, husband makes a generalized attack on the calculation of child support.  We reject husband's argument and find the award consistent with Code § 20-108.1's statutory factors and the overarching policy of reinforcing the "best interest of the child or children." Shoup v. Shoup, 37 Va. App. 240, 249, 556 S.E.2d 783, 787 (2001); see also Mir, 39 Va. App. at 130, 571 S.E.2d at 305 (recognizing the rebuttable presumption that the court's award "is the correct amount of child support to be awarded").

F.

Husband raises two questions concerning the trial court's equitable distribution determination.[6]  First, he argues that the

_____

[5] Rule 5A:20(e) bars husband's argument that the trial court "erred and was plainly wrong in the award of life insurance coverage to the children."

[6] Once again, husband's failure to comply with Rule 5A:20(e) bars his arguments that the trial court erred by (i) "not requiring the complainant to refinance the indebtedness on the marital residence within a specified period of time"; (ii) in accepting wife's proposed division of the household furnishings over husband's proposed division; (iii) in its valuation of his Pfizer IRA; (iv) in its valuation of his FBI retirement account; (v) in its "findings as to the source of funds in the marital

-

chancellor misapplied the statutory factors in Code
§ 20-107.3(E) by considering his marital fault without first
finding whether it had a pecuniary impact on the value of
marital assets.  Second, husband contends that the chancellor
abused her discretion in awarding wife the marital home.  We
disagree with both assertions.

Husband's first argument overlooks settled law.  As we
recently reaffirmed, consideration of "nonmonetary contributions
to the well being of the family under Code § 20-107.3(E)(1)
requires no showing of an adverse economic impact.  In that
context, the 'well-being' of the family relates to the effect on
the family's emotional welfare and condition."  Watts v. Watts,
40 Va. App. 685, 699, 581 S.E.2d 224, 231 (2003); see also
Barker v. Barker, 27 Va. App. 519, 540, 500 S.E.2d 240, 250
(1998); O'Loughlin v. O'Loughlin, 20 Va. App. 522, 528, 458
S.E.2d 323, 326 (1995).[7]  Nor does the statute require a
pecuniary impact on marital property when considering how

savings account" and its subsequent division; (vi) in finding
that wife did not dissipate "assets of the marital estate"; and,
(vii) in "designating complainant irrevocable beneficiary to all
or a portion of defendant's survivor annuity plan."

[7] In this case, the chancellor predicated the divorce on
husband's cruelty and constructive desertion.  For equitable
distribution purposes, however, the trial court may consider
facts demonstrating marital fault outside the parameters of the
fault ground for the a vinculo divorce.  See Cousins v. Cousins,
5 Va. App. 156, 158-59, 360 S.E.2d 882, 884 (1987); Bacon v.
Bacon, 3 Va. App. 484, 490, 351 S.E.2d 37, 41 (1986); Bentz v.
Bentz, 2 Va. App. 486, 488, 345 S.E.2d 773, 774 (1986).

-

marital fault has affected the "mental condition" of a spouse under Code § 20-107.3(E)(4).  Watts, 40 Va. App. at 698, 581 S.E.2d at 231; see also Smith v. Smith, 18 Va. App. 427, 431, 444 S.E.2d 269, 273 (1994).

The evidence before the chancellor demonstrated an acutely negative impact of husband's conduct on the "well-being of the family," Code § 20-107.3(E)(1), and on the "mental condition" of his wife, Code § 20-107.3(E)(4).  For all intents and purposes, the "well-being" of the family ceased to exist as a direct consequence of husband's serial adulterous relationships and his announced desire to be done with the marriage.  Describing this conduct as a negative non-monetary contribution to the well-being of the family is, at best, euphemistic.

In addition, the chancellor found that wife "began to suffer physically and emotionally."  The husband's conduct left his wife "totally numb," "emotionally bankrupt," and in a "state of shock" and "total devastation."  She stayed in counseling and under anti-anxiety medication up until the time of trial.  The children also "exhibited physical and emotional problems attributable to the breakup of the family."  Both required extensive counseling.  One suffered from "fears and anxiety" severe enough to cause sleeping disorders.  The other experienced elevated "stress" and "fainting spells" at school requiring treatment at a local hospital emergency room.

-

In contrast, the chancellor found compelling wife's positive non-monetary contributions to the well-being of the family. As the chancellor noted, wife "sacrificed her career for the well being of the family" by ceasing to work "outside of the home" shortly before the birth of her first child. She "became the primary caretaker of the children." Wife's recognized "abilities as a homemaker" greatly enhanced the value of each of the parties' three marital residences. And much of husband's financial success, the chancellor found, was positively influenced by wife's faithful support of his professional endeavors.

The chancellor, therefore, did not misapply the equitable distribution factors in Code § 20-107.3(E). The evidence amply supports the chancellor's finding that husband's fault was severely detrimental to the "well-being of the family," Code § 20-107.3(E)(1), and the "mental condition" of the parties, Code § 20-107.3(E)(4).

Husband's second argument, that the chancellor erred in awarding the marital home to wife, also fails. Equitable distribution does not mean equal distribution. In adopting the equitable distribution model, the General Assembly "expressly rejected any presumption in favor of an equal distribution of marital property." Papuchis v. Papuchis, 2 Va. App. 130, 132, 341 S.E.2d 829, 831 (1986) (quoting Report of Joint Subcommittee

-

<u>Studying Code § 20-107</u>, House Doc. No. 21, at 8 (1982)).

"Instead, a trial court considers the factors in Code

§ 20-107.3, to make a decision regarding division of marital

property." <u>Shackleford v. Shackleford</u>, 39 Va. App. 201, 211,

571 S.E.2d 917, 922 (2002).

In this case, the chancellor considered each of the

statutory factors, including the contributions (both positive

and negative) to the "well-being of the family," Code

§ 20-107.3(E)(1), and the "mental condition of the parties,"

Code § 20-107.3(E)(4).  The evidence showed that the children

had lived in the home with their mother and that she operated

her business from this location.  The factual predicates for the

chancellor's decision are valid, and her exercise of discretion

sound.  We thus find no error in this aspect of the equitable

distribution award.[8]

G.

We also find no merit in husband's challenge to the

chancellor's award of wife's attorney's fees against him.

Whether to award attorney's fees "is a matter submitted to the

sound discretion of the trial court and is reviewable on appeal

---

[8] Husband waived his final two equitable distribution arguments, which claimed that the court erred by (i) "denying the direct examination of complainant by defendant in his case-in-chief"; and (ii) not factoring the attorney's fee into his assets and liabilities when determining an appropriate level of child and spousal support.  <u>See</u> Rule 5A:20(e).

-

only for an abuse of discretion." Northcutt, 39 Va. App. at 199-200, 571 S.E.2d at 916 (quoting Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987)) (internal quotation marks omitted). Because each case presents its own unique set of equities, principles of appellate review steer clear of inflexible rules and focus instead on "reasonableness under all the circumstances." Joynes, 36 Va. App. at 429, 551 S.E.2d at 24.

The chancellor awarded a portion of wife's attorney's fees ($15,000) against husband.[9] We find this decision well within the trial court's discretion for two reasons. First, as the chancellor found, the evidence lays the blame for the demise of this marriage squarely on husband's shoulders. It is entirely fair that he, as the party causing the need for this litigation, should contribute toward the transactional cost of the legal proceedings. Second, the record also reflects that husband's strategy of contesting nearly every point, irrespective of the objective merits of his position, unnecessarily increased the cost of this litigation. These observations amply justify the chancellor's decision to require husband to pay $15,000 of wife's attorney's fees.

---

[9] Husband includes his challenge to the fee award within a question presented numbered "28 & 29." Because the argument appears in the second half of the dual-question, for clarity sake, we will treat the attorney's fee issue as question 29.

-

H.

Finally, we turn to the question of attorney's fees on appeal. "The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment." O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). From our unique vantage point, we can examine the arguments on appeal not merely in the abstract, but also as they fit within the course of conduct shown in the trial court.

Wife seeks fees in this case, arguing that many of husband's assertions on appeal are "clearly without foundation in law or fact." We agree. Husband raised twenty-nine assignments of error — all of which he either failed to brief adequately or failed to analyze properly under the governing standard of review. The substance of his arguments, as well as the manner of their presentation, fall well below our expectations. See Gottlieb, 19 Va. App. at 95, 448 S.E.2d at 677 (awarding appellate fees where "[m]any of husband's questions presented or assignments of error were not supported by the law or the evidence").[10] We view husband's appellate

---

[10] See also Marks v. Marks, 36 Va. App. 216, 231, 548 S.E.2d 919, 926 (2001) (awarding "reasonable expenses incurred in defending this unjustified appeal"); Taylor v. Taylor, 27 Va. App. 209, 218, 497 S.E.2d 916, 920 (1998) (remanding to

-

arguments as little more than a continuation of the performance that led to the award of fees against him in the trial court.

For these reasons, we award wife all attorney's fees incurred on appeal and remand to the trial court the task of ensuring that the amount requested is reasonable.[11]

IV.

In sum, we affirm the chancellor's decisions on the grounds of divorce, spousal support, child support, equitable distribution, and liability for attorney's fees in the trial court. We grant wife's request for attorney's fees on appeal and remand this matter to the chancellor to calculate the amount.

Affirmed and remanded.

---

trial court calculation of "counsel fees incurred in this appeal"); Johnson v. Johnson, 26 Va. App. 135, 154, 493 S.E.2d 668, 677 (1997) (remanding for award of "counsel fees incurred by father in this appeal"); Via v. Via, 14 Va. App. 868, 873, 419 S.E.2d 431, 434 (1992) (ordering trial court to "enter an appropriate award of attorney's fees for services rendered to [wife] in the trial court, as well as on appeal").

[11] In his reply brief on appeal, husband seeks an award of attorney's fees against wife. We deny that request.

-