COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick,[*] Judges Baker and Annunziata
Argued at Alexandria, Virginia


ZUBAIR AHMAD SALEEM

v.    Record No. 0443-97-4

AFSHAN GHIAS SALEEM, A/K/A
 AFSHAN NOREEN QURESHI
                                            OPINION BY
                              CHIEF JUDGE JOHANNA L. FITZPATRICK
                                         JANUARY 20, 1998
AFSHAN GHIAS SALEEM, A/K/A
 AFSHAN NOREEN QURESHI

v.    Record No. 0444-97-4

ZUBAIR AHMAD SALEEM


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                     Michael P. McWeeny, Judge

            Lawrence D. Gaughan (Gaughan & Schargorodski,
            on briefs), for Zubair Ahmad Saleem.

            Bruce Richard Eells (John P. Snider;
            Matthews & Snider, on briefs), for Afshan
            Ghias Saleem, a/k/a Afshan Noreen Qureshi.


        These are appeals from a modification of child support

decree entered by the Circuit Court of Fairfax County (trial

court).  Zubair Saleem (husband) contends the trial court erred

in:  (1) applying the support law of New York to determine his

child support obligation for his daughter, Nadia; and (2) failing

to impute income to Afshan Saleem (wife).

        Wife filed a cross-appeal contending the trial court erred

_____
        [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

in:  (1) determining that the law of Virginia would control the duration of husband's support obligation; and (2) making findings of fact that are not supported in the trial record.

## I. Background

Husband and wife were married in Pakistan on December 30, 1974.  Three children were born of the marriage:  Nadia, born March 6, 1980; Seth, born July 10, 1982; and Gibran, born May 28, 1984.  The parties separated, entered into a property settlement agreement (PSA) on November 13, 1986, and were divorced by final decree on May 17, 1988.

The PSA provided for joint legal custody of the children, with their principal residence from the date of the parties' separation to May 28, 1991 with wife.  After May 28, 1991, the principal residence of the parties' two sons would be with husband.  Husband agreed to pay child support for the three children while they lived with wife.  The payments would continue until "the change of residence of [the boys], at which time [wife] shall be solely responsible for [the daughter's] support and [husband] shall be solely responsible for [the sons'] support . . . ."  The child support provision also included the following language:  "In any event, [husband's] and [wife's] obligation for child support shall terminate whenever a child dies, reaches the age of 18 years, or otherwise becomes emancipated, whichever comes first."

On August 9, 1988, the parties executed an amendment to the

2

PSA, which was incorporated into the trial court's modification decree of March 25, 1989. The amendment changed the principal residence of all three children to husband and terminated his child support obligation as of August 15, 1988. Paragraph two of the amendment and modification decree contained the following provision regarding the parties' child support obligations:

> In the event that the principal residence of one or two of the children should revert to [wife], any provision of said child support shall be subject to further agreement by the parties, and if no agreement is reached, such support shall be determined on the basis of the laws of the jurisdiction(s) in which the children are residing at that time.

(Emphasis added).

By order dated February 23, 1996, custody of the parties' daughter was awarded to wife. The parties could not reach an agreement regarding the terms of husband's child support obligation for Nadia, and wife filed a motion for support, alleging a change of circumstances.

Prior to trial, the parties filed a preliminary motion requesting that the trial court determine which state's law would apply to the computation of Nadia's support. In its July 29, 1996 opinion letter, the trial court referred to paragraph two of the Amendment and found as follows:

> It is clear . . . that the parties contemplated the possibility of the children being "split" between two jurisdictions and on the plain meaning of the language intended the law of each jurisdiction to apply to the child or children in that jurisdiction. Thus, New York law will apply to Nadia and Virginia law will apply to the boys.

3

A hearing regarding child support and visitation was held on August 19, 1996. Testimony was presented regarding the daughter's expenses, wife's employment history, and her recent efforts to find work. Wife last worked in 1990, made approximately $26,000 per year and was asked to resign from this position as well as from an earlier job. At the conclusion of the hearing, the court indicated that it did not think it had jurisdiction to order child support for the daughter beyond "the Virginia 18 or 19 rule."

On December 13, 1996, the trial court entered a final order regarding child support for the parties' daughter and determined "pursuant to its letter opinion of July 29, 1996 . . . made part of the record herein, that New York law shall apply to how child support is calculated for [the daughter], and that the Virginia procedure for split custody shall be applied." The order further provides:

> Virginia law shall apply to the duration of the child support award for all three children . . . and . . . this Court is bound by the limitations of [Code § 20-124.2(C)] as to the period for which child support is payable. . . . [T]here was no stipulation either in the [Property Settlement] Agreement or the Amendment which extends the child support obligation ". . . beyond when it would otherwise be terminated as provided by law." There is therefore no authority to vary the provisions of [Code § 20-124.2(C)].

Additionally, the trial court found "no basis to impute income to [wife]. . . . [I]t is not a question of how much. It is a question of whether or not it falls under the Brody rule."

4

See Brody v. Brody, 16 Va. App. 647, 432 S.E.2d 20 (1993).  Both parties appeal this ruling.[1]

II.  Application of New York Child Support Procedure

Husband initially contends the trial court erred in using the New York child support formula to establish his support obligation for Nadia without first establishing the presumptive amount of support as required by Code § 20-108.1.  We agree.

"The starting point . . . for determining the child support obligation of a party, whether initially or at a modification hearing, is to compute the presumptive amount using the schedule found in Code § 20-108.2(B)."  Watkinson v. Henley, 13 Va. App. 151, 158, 409 S.E.2d 470, 473 (1991).  In any such proceeding, a trial court must first determine the presumptive amount of child support before considering any other factors.  See Richardson v. Richardson, 12 Va. App. 18, 401 S.E.2d 894 (1991).  One factor

---

[1]Wife contends that Rule 5A:18 bars our consideration of husband's appeal concerning the application of the New York support law.  This contention is without merit.  Husband argued this issue throughout the proceedings, and he specifically noted the following on the December 13, 1996 decree:

> Objection to calculating child support amount
> for Nadia A. Saleem pursuant to New York law;
> objection to not imputing income to
> Complainant; objection to court's finding
> Defendant's gross monthly income at $7,068.00
> and not allowing any deduction of gross
> amount due to FICA withholdings allowed
> pursuant to New York law or for costs
> incurred in producing income; objection to
> adding $200.00 monthly in extra-ordinary
> medical expenses to Complainant's expenses
> for Nadia A. Saleem.

which may be considered in determining whether to deviate from the established amount is "[a] written agreement between the parties which includes the amount of child support."  Code § 20-108.1(B)(16).

> [A] trial court need not award child support in the statutorily presumptive amount if a deviation from such an amount is justified. However, it must determine the guideline amount and then may compare this amount with the provisions of the separation agreement. If the factors . . . justify an award based upon the provisions of the separation agreement . . . it may then enter an award in the amount provided.

Scott v Scott, 12 Va. App. 1245, 1249, 408 S.E.2d 579, 582 (1991).  See Alexander v. Alexander, 12 Va. App. 691, 406 S.E.2d 666 (1991).

The trial court had no statutory authority to establish child support using the law and procedure of a different forum without following the procedure outlined in Code § 20-108.1.  The parties' contractual agreement may not confer such authority when it is not otherwise granted by statute.  A parent's ability to unilaterally determine the child support amount and the procedure for arriving at that obligation have been legislatively curtailed.  Our child support guidelines were enacted by the General Assembly in furtherance of national policy intended to "assure that both the child's needs and the parent's ability to pay are considered in determining the amount of support awards and to decrease the disparity in . . . awards."  Richardson, 12 Va. App. at 20, 401 S.E.2d at 895.  "The language of the statute

6

reflects the General Assembly's decision to adopt the income shares model for child support guidelines." Farley v. Liskey, 12 Va. App. 1, 4, 401 S.E.2d 897, 899 (1991).

We find no authority for wife's position that the parties may override the legislative scheme by agreeing to establish a different process for arriving at the appropriate support amount or that any error in failing to follow the mandatory procedure was harmless. Code § 20-108.1 provides a rebuttable presumption that the guidelines in Code § 20-108.2 establish the correct amount of child support. Code § 20-108.1(B)(16) authorizes a trial court to deviate from the presumptive guideline amount upon consideration of "[a] written agreement between the parties which includes the amount of child support." However, this variance provision has limited scope and can be considered only after the procedure mandated by the statute is followed, that is, only after a calculation of the presumptive amount is made.

Additionally, Code § 20-108.1(B)(16) refers to a written agreement that sets forth a different amount, not a different process. Thus, even if the parties specifically agreed to apply New York law, the New York guidelines could only be used to suggest an alternate amount of child support. Once the trial court determined the presumptive amount under the Virginia guidelines it could consider whether the New York amount was authorized by the parties' agreement as a deviation from the

7

guidelines under Code § 20-108.1(B)(16).[2]  The trial court erred in finding that the parties' agreement controlled whether "New York law shall apply to how child support is calculated for [Nadia]."

### III. Duration of Support

In her cross-appeal, wife argues that once the trial court used New York law to determine the amount of support for Nadia, it was also bound to apply New York law to the duration issue. Her argument is without merit, because the trial court erred in substituting New York law for the Virginia guidelines.  The parties' agreement to apply New York law merely supplied an alternate amount of child support and was relevant only as a factor under Code § 20-108.1(B)(16).  Since the trial court's reliance on the child support law of New York was misplaced, wife's argument to extend that reliance fails.

Wife also argues that the plain meaning of the amendment provision that "if no agreement is reached, such support shall be determined on the basis of the laws of the jurisdiction(s) in which the children are residing" demonstrates the parties' intent that all aspects of the relevant jurisdiction's support statutes

---

[2]Husband's contention that the agreement is so ambiguous that it should not be a reason to deviate from the presumptive amount is without merit.  The language demonstrates the parties' intention that the law of the jurisdiction in which the children resided at the time would be considered.  This agreement is a factor to which the trial court may refer as a reason to deviate if it concludes that "application of [the guidelines] would be unjust or inappropriate."  Cooke v. Cooke, 23 Va. App. 60, 63, 474 S.E.2d 159, 160 (1996) (citation omitted).

apply, including duration.  While "the court may confirm a stipulation or agreement of the parties which extends a support obligation beyond when it would otherwise terminate as provided by law," Code § 20-124.2(C), we find no evidence to indicate that husband and wife intended that support for two of the children would terminate at nineteen while support for the other would last until twenty-one.  The relevant provision in the Amendment has no such plain meaning, and the original PSA included the explicit provision that "[i]n any event, [the parties'] obligation for child support shall terminate whenever a child dies, reaches the age of 18 years, or otherwise becomes emancipated, whichever comes first."  The trial court did not err in applying Virginia law and finding that child support would continue until the age of nineteen or high school graduation, whichever first occurs.[3]

## IV. Imputed Income

Additionally, husband contends the trial court erred in failing to impute income to wife.  "A trial court has discretion to impute income to [a party] who is voluntarily unemployed." Bennett v. Commonwealth, 22 Va. App. 684, 691, 472 S.E.2d 668, 672 (1996).  See Code § 20-108.1(B)(3).  The trial court's decision not to impute income "will be upheld on appeal unless it is plainly wrong or unsupported by the evidence."  Bennett, 22

[3]Because we reverse and remand on the issue of the proper amount of child support, wife's additional argument regarding the trial court's record is moot.

9

Va. App. at 691-92, 472 S.E.2d at 672 (citation omitted). In the instant case, wife gave uncontradicted testimony that she was asked to resign from her prior employment and that she has made a limited effort to obtain work in New York. The trial court's decision not to impute income is supported by evidence and was not an abuse of discretion. Nonetheless, the question of imputation must be addressed anew on remand. Imputation of income is a factor to be considered in deciding whether to deviate from the presumptive amount of child support, and "[a]ny child support award must be based on circumstances existing at the time the award is made." Sargent v. Sargent, 20 Va. App. 694, 703, 460 S.E.2d 596, 600 (1995).

We hold that it was error to award child support based on New York law without first determining whether the presumptive amount of support calculated pursuant to the Virginia child support guidelines was inappropriate. Additionally, in the absence of an explicit agreement extending child support, it was not error to limit the duration of support under Code § 20-124.2(C). Finally, the trial court did not err in refusing to impute income to wife. For the foregoing reasons, we affirm in part, reverse in part, and remand.

Affirmed in part,
reversed in part,
and remanded.