COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Annunziata and Humphreys
Argued at Alexandria, Virginia


JOHN L. MARTIN

MEMORANDUM OPINION* BY
v.   Record No. 0322-01-4     JUDGE ROBERT J. HUMPHREYS
JANUARY 29, 2002

C. MARIE MARTIN


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
Thomas D. Horne, Judge

John L. Martin, pro se.

Ilona Ely Freedman Grenadier (Elaine M.
Vadas; Grenadier, Anderson, Simpson &
Duffett, P.C., on brief), for appellee.


John L. Martin appeals a decision of the trial court denying his motion for a reduction in spousal support. Martin contends that the trial court erred in finding the parties' property settlement agreement ("PSA") was not subject to modification, that it was unambiguous, that his former wife had no duty to maximize her income, and in failing to impute income to her. For the reasons that follow, we affirm the decision of the trial court and remand.

Martin ("husband") and C. Marie Martin ("wife") entered into a PSA on October 13, 1997. The final divorce decree, entered on June 30, 1998, ratified, approved, affirmed and

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incorporated the PSA.  Paragraph seven of the PSA states as follows:

>    7.  Spousal Support
>
>    The Husband shall pay, effective 9/1/97, and on the first of each month thereafter, the sum of $1200.00 monthly to the Wife for the maintenance and support of the Wife.  It is understood that this amount shall be deductible to the Husband and includable in Wife's gross income.  The spousal support contained herein shall terminate upon the death of either party or upon Wife's remarriage, whichever first occurs.  It is further agreed that there shall be no reduction in support unless Wife is earning in excess of $35,000.00 per year in gross income, and should there be a modification downward if Wife is earning in excess of $35,000.00, and her gross income through no fault of her own should fall to $35,000.00 or below, the original spousal support of $1200.00 shall be the minimum amount for which the Husband shall be obligated to pay.  There shall be no increase above $1200.00 monthly unless Husband's gross income exceeds $90,000.00.  Husband's annual income from all sources, he represents, is no greater than $65,000.00.

Neither party opposed the ratification, affirmation and incorporation of the PSA into the final decree.

On March 31, 2000, the trial court issued a rule to show cause against husband based upon wife's allegation that he had failed to make timely spousal support payments.  On April 13, 2000, husband filed a motion for a reduction in spousal support. On April 20, 2000, wife filed a motion to enjoin husband from seeking to reduce spousal support while he was in arrears.

-

At a May 5, 2000 hearing on the matter, the trial court found husband in arrears in the amount of $3,500, but reserved the remaining issues for a hearing at a later date.  After a subsequent hearing on July 17, 2000, the trial court found husband in willful civil contempt for failing to make the spousal support payments pursuant to the PSA, again reserving the remaining issues for hearing at a later time.

Finally, on October 5, 2000, after yet another hearing, the trial court denied husband's motion for a spousal support reduction.  The court found that the PSA was not generally modifiable, that the terms of the PSA were unambiguous and not subject to the admission of parol evidence, that the PSA did not impose a duty upon wife to maximize her income, and that, thus, no income could be imputed to wife.  Husband appeals this ruling.

By well established principles, we review the facts in the light most favorable to the party prevailing below, in this case, wife.[1]  Further, "'[w]here, as here, the court hears the evidence <u>ore tenus</u>, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'"[2]

---

[1] <u>Richardson v. Richardson</u>, 30 Va. App. 341, 349, 516 S.E.2d 726, 730 (1999).

[2] <u>Pommerenke v. Pommerenke</u>, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988) (quoting <u>Martin v. Pittsylvania Dept. of Social Services</u>, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1996)).

-

Husband argues that because the PSA is silent as to whether it is "generally modifiable," it must be construed to be "generally modifiable" pursuant to Code § 20-109(A).  He further contends that Code § 20-109(C) does not limit the trial judge's authority to modify the PSA.[3]  We disagree.

    [3]  Code § 20-109, at the time of the filing of the PSA and entry of the final decree, provided as follows:

> § 20-109.  Changing maintenance and support for a spouse; effect of stipulations as to maintenance and support for a spouse; cessation upon cohabitation, remarriage or death. —
>
> A.  Upon petition of either party the court may increase, decrease, or terminate spousal support and maintenance that may thereafter accrue, whether previously or hereafter awarded, as the circumstances may make proper.  Upon order of the court based upon clear and convincing evidence that the spouse receiving support has been habitually cohabiting with another person in a relationship analogous to a marriage for one year or more commencing on or after July 1, 1997, the court may decrease or terminate spousal support and maintenance unless (i) otherwise provided by stipulation or contract or (ii) the spouse receiving support proves by a preponderance of the evidence that termination of such support would constitute a manifest injustice.
>
> B.  In suits for divorce, annulment and separate maintenance, and in proceedings arising under subdivision A 3 or L of § 16.1-241, if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, no decree or order directing the payment of support and maintenance for the spouse, suit money, or counsel fee or establishing or imposing any

-

In the matter at hand, husband and wife entered into a valid settlement agreement which specified the amount of spousal support he would pay, and that she would receive. The agreement did not grant the trial court the authority to "generally modify" its terms, nor, as husband suggests, was the PSA silent as to whether it was "generally modifiable." Instead, by the agreement's express language, the parties granted the trial court the authority to modify spousal support only in the case of specified events. Namely, in the event that wife began earning in excess of $35,000 per year in gross income, or husband earned in excess of $90,000. Where, as here, the parties have agreed to a sum of spousal support and the agreement has been incorporated into the final decree of divorce, the trial court does not have the authority to modify support, except as provided in the agreement. Accordingly, we find no error in the trial court's determination that the PSA

---

other condition or consideration, monetary or nonmonetary, shall be entered except in accordance with that stipulation or contract. If such a stipulation or contract is filed after entry of a final decree and if any party so moves, the court shall modify its decree to conform to such stipulation or contract.

C. Unless otherwise provided by stipulation or contract, spousal support and maintenance shall terminate upon the death of either party or remarriage of the spouse receiving support.

-

was not "generally modifiable" as it pertained to spousal support.

Husband next argues that the PSA is ambiguous, thus, the trial court erred in refusing to permit the introduction of parol evidence to determine the intent of the parties. Specifically, husband contends that the PSA is ambiguous in that it fails to set forth the period within which the parties intended wife to begin earning at least $35,000 in gross income. We disagree.

Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally.[4] "A well-settled principle of contract law dictates that 'where an agreement is complete on its face, is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.'"[5]

> "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract. The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended

---

[4] <u>Southerland v. Southerland</u>, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995).

[5] <u>Ross v. Craw</u>, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986) (quoting <u>Globe Company v. Bank of Boston</u>, 205 Va. 841, 848, 140 S.E.2d 629, 633 (1965)).

-

what the written instrument plainly declares."  A corollary to the last stated principle is that courts cannot read into contracts language which will add to or take away from the meaning of the words already contained therein.[6]

"Moreover, what the parties claim they might have said, or should have said, cannot alter what they actually said."[7]

Here, we agree with the trial court's determination that the language of the PSA is clear in demonstrating that the parties contemplated modifications in spousal support based only upon very specific conditions.  Furthermore, even though the PSA may not contain any reference to the time-frame within which the parties intended wife to meet one of these conditions, namely, to earn $35,000 in gross income, the parties had a right to agree to what was contained therein, unless their agreement was prohibited by public policy.  No such prohibition exists here. Indeed, "[m]arital property settlements entered into by competent parties upon valid consideration for lawful purposes are favored in the law and will be enforced unless their illegality is clear and certain."[8]  Accordingly, since "'[p]arol evidence of prior or contemporaneous oral negotiations or

---

[6] Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984) (quoting Mead v. Wallen, 226 Va. 465, 467, 311 S.E.2d 103, 104 (1984)).

[7] Id. at 188, 313 S.E.2d at 398.

[8] Cooley v. Cooley, 220 Va. 749, 752, 263 S.E.2d 49, 52 (1980).

-

stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written instrument,'"[9] we find no error in the trial court's refusal to permit parol evidence on this issue.

Finally, husband argues that the trial court erred in holding that the terms of the PSA imposed no duty of good faith upon wife to maximize her income and, therefore, that income could not be imputed to her under the terms of the PSA. Once again, we agree with the trial court.

As we have found previously, the terms of this PSA are clear and unambiguous. Although the terms of the PSA clearly express the parties' intention that wife will work, the PSA does not require, even by implication, wife to maximize her income. It is true that, generally, one who seeks spousal support is obligated to earn as much as he or she reasonably can to reduce the amount of the support need, and a spouse may not choose a low paying position that penalizes the other spouse.[10] However, here, unlike the parties in Srinivasan and Blackburn v. Michael,[11] relied upon by husband, the parties agreed upon the amount of spousal support and the terms under which it would be

---

[9] McComb v. McComb, 226 Va. 271, 274, 307 S.E.2d 877, 879 (1983) (quoting Godwin v. Kerns, 178 Va. 447, 451, 17 S.E.2d 410, 412 (1941)).

[10] Srinivasan v. Srinivasan, 10 Va. App. 728, 734, 396 S.E.2d 675, 679 (1990).

[11] 30 Va. App. 95, 515 S.E.2d 780 (1999).

-

paid.  In addition, the parties expressly precluded the trial court from modifying spousal support, except upon the occurrence of certain pre-determined conditions.

It is well established that in determining the intent of the parties, courts will generally not infer covenants and promises that are not contained in the written provisions of a contract.[12]  Further, as stated above, "Code § 20-109(C) expressly limits the court's authority to modify an agreed upon spousal support award according to the terms of a stipulation or contract signed by the parties."[13]

Thus, since "[t]he trial court's decision not to impute income 'will be upheld on appeal unless it is plainly wrong or unsupported by the evidence,'"[14] we affirm the decision of the trial court on these issues.

Finally, in accordance with the parties' PSA, we grant wife's request for attorney fees incurred on appeal, and remand this matter to the trial court solely for a determination of the appropriate amount.

<u>Affirmed and remanded.</u>

---

[12] See <u>Pellegrin v. Pellegrin</u>, 31 Va. App. 753, 759, 525 S.E.2d 611, 614 (2000).

[13] <u>Blackburn</u>, 30 Va. App. at 100, 515 S.E.2d at 783.

[14] <u>Saleem v. Saleem</u>, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998) (quoting <u>Bennett v. Commonwealth</u>, 22 Va. App. 684, 692, 472 S.E.2d 668, 672 (1996)).

-