COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Felton and Senior Judge Coleman
Argued at Richmond, Virginia


CHRISTOPHER G. WEBB

                                                MEMORANDUM OPINION* BY
v.        Record No. 1942-03-2                  JUDGE WALTER S. FELTON, JR.
                                                      APRIL 27, 2004
DAWN D. WEBB


              FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                           Michael C. Allen, Judge

              Denis C. Englisby (Englisby, Englisby & Vaughn, on brief), for
              appellant.

              No brief or argument for appellee.


        Christopher G. Webb (husband) appeals from a final decree granting a divorce to Dawn D.

Webb (wife).  He contends the trial court erred when it imputed income to him in its award of child

support and in its award of spousal support to wife.  He also contends that the trial court erred in its

Qualified Domestic Relations Order (QDRO), when it calculated the value of the marital shares of

husband's retirement plan on a date different than the parties' separation date.  For the following

reasons, we affirm in part and reverse in part.

        As the parties are fully conversant with the record, and this memorandum opinion carries

no precedential value, we recite only those facts necessary to the disposition of this appeal.

                                      BACKGROUND

        Under familiar principles, we view the evidence and all reasonable inferences deducible

therefrom in the light most favorable to the prevailing party below, and we will not reverse the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

trial court's decision unless plainly wrong or without evidence to support it. Northcutt v. Northcutt, 39 Va. App. 192, 195-96, 571 S.E.2d 912, 914 (2002). So viewed the evidence establishes that the parties married on March 26, 1988, in Grandview, Texas, where husband was employed by Chaparral Steel Company. Subsequently, the parties moved to Virginia, where husband was employed at Chaparral Steel Company's Virginia plant, at an annual salary of $61,000. Two children were born of the marriage, who were ages thirteen and eleven at the time of the divorce.

The parties separated on or about February 15, 2001, after husband moved out of the marital bedroom. On June 1, 2001, wife filed a bill of complaint seeking a divorce. On November 29, 2001, the trial court entered a temporary order for husband to pay child support based on his salary of $61,000 at Chaparral Steel, Virginia. It also ordered him to make the mortgage payments on the family residence and the payments on wife's vehicle. The parties continued to reside in the same house until January 25, 2002, when husband moved back to Texas to care for his seriously ill father. Husband's father died from his illness fifteen days later.

Husband remained in Texas, and was again employed by Chaparral Steel in Texas, but at the lower salary of $45,760 a year. He stopped his support payments and filed for bankruptcy, obtaining a Bankruptcy Court Stay from paying the monthly mortgage payments and the monthly payments on wife's automobile. Child support continued to be paid through garnishment of husband's wages.

On July 7, 2003, the trial court entered its final decree awarding wife a divorce on the grounds that the parties had lived separately and apart without cohabitation and without interruption for more than a year, finding that the parties' date of separation was February 15, 2001. It awarded custody of both minor children to wife, and ordered husband to pay child support based on an annual income of $61,000. It awarded wife spousal support and ordered

husband to pay $8,000 in arrearages in spousal support. Over husband's objection, the trial court adopted husband's annual income of $61,000 in determining his support obligations, concluding that he voluntarily left the higher paying position in Virginia for a lower paying one in Texas.

On July 7, 2003, the trial court also entered a QDRO, awarding wife fifty percent of the marital share of husband's qualifying retirement plan. It valued husband's retirement plan at $47,975.08 as of December 3, 2002.

DETERMINATION OF SUPPORT

Husband contends that the trial court erred in basing its decision on child and spousal support on his decision to voluntarily leave his higher paying job in Virginia for a lower paying one in Texas. On appeal, he concedes that he voluntarily changed jobs and that his income was less after doing so. However, he insists that his father's illness was a sufficient change in circumstances to warrant the trial court's use of the current lower salary. We disagree.

"A reduction in income resulting from a voluntary employment decision does not require a corresponding reduction in the payor spouse's support obligations, even if the decision was reasonable and made in good faith." Stubblebine v. Stubblebine, 22 Va. App. 703, 708, 473 S.E.2d 72, 74 (1996) (citing Antonelli v. Antonelli, 242 Va. 152, 156, 409 S.E.2d 117, 119-20 (1991). The decision to impute income is within the sound discretion of the trial court, and its refusal to impute income will not be reversed unless plainly wrong or unsupported by the evidence. See Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998); Code §§ 20-107.1(1), 20-108.1(B)(3).

The record reflects that on January 25, 2002, husband moved back to Texas to take care of his father who was very ill, suffering from diabetes. Husband testified that he voluntarily left his job in Virginia in order to return to Texas to care for his father, who died fifteen days after husband arrived there.

The record reflects that after husband voluntarily left his employment with Chaparral Steel in Virginia, he was able to get a job again with Chaparral Steel in Texas, but at the lower salary of $45,760 a year. Husband testified that after his father died, he contacted his former supervisor in Virginia, but there were no positions available at Chaparral Steel in Virginia. Husband remained in Texas.

Although husband's job changes may have been based on a *bona fide* personal reason, he cannot be permitted thereby to gamble with his "children's ability to receive his financial support." Antonelli, 242 Va. at 156, 409 S.E.2d at 119. In Antonelli, the Supreme Court concluded that:

> [A] father is not prohibited from voluntarily changing employment. But, . . . when the father who was under court order to pay a certain sum for child support, which he was able to pay given his employment, chose to pursue other employment, albeit a bona fide and reasonable business undertaking, the risk of his success at his new job was upon the father, and not upon the children.

Id. at 156, 409 S.E.2d at 119.

Husband conceded that the decision to relocate to Texas to be with his ailing father was voluntary. Moreover, he continued to make payments on his truck, though he ceased to make the court-ordered mortgage payments and payments on wife's vehicle. He also testified that he paid nearly $1,000 in cash a month to rent a room in a friend's home, but that he had no lease agreement.

The trial court found that husband was aware of the level of his legal obligation to support his wife and children prior to the move and that this obligation continued after he relocated to Texas. The fact that he earned less at Chaparral Steel in Texas than he did in Virginia was a consequence of his voluntary decision.

- 4 -

We find that the evidence was sufficient to support the trial court's decision to award child support based on husband's annual income of $61,000, his salary before he terminated his employment with Chaparral Steel in Virginia. Accordingly, we conclude the trial court did not abuse its discretion in its award of child and spousal support.

HUSBAND'S RETIREMENT PLAN

Husband contends that the trial court erred in its award of fifty percent of the marital share of husband's retirement account valued as of December 3, 2002, a date different than the parties' date of separation. He argues that the trial court was required to use February 15, 2001, the date the trial court determined to be the date of the parties' separation, as the valuation date of the marital share of his retirement plan. Code § 20-107.3(G) defines a marital share of a retirement plan or pension as that amount accrued from the date of marriage to the date of separation.[1] See Gottlieb v. Gottlieb, 19 Va. App. 77, 86, 448 S.E.2d 666, 672 (1994) (valuation of pension funds controlled by Code § 20-107.3(G)); Mann v. Mann, 22 Va. App. 459, 464, 470 S.E.2d 605, 607

---

[1] In addition to the monetary award made pursuant to rights and interests of the parties in the marital property, and consideration of the factors expressed in Code § 20-107.3(E), Code § 20-107.3(G)(1) provides, in pertinent part, that:

> The court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator or other holder of the benefits. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made. "Marital share" means that portion of the total interest, the right to which was earned during the marriage *and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.*

(Emphasis added).

(1996) (finding that the non-marital portion of a defined benefit plan is "the income earned by pre- and post-marital contributions to the pension"). The legislature has defined the marital share of a qualifying retirement plan as the amount which accrued between the date of marriage and the date of separation.

The record reflects that on July 7, 2003, the trial court entered its final decree of divorce, fixing the date of separation at February 15, 2001. In its QDRO, entered July 9, 2003, the trial court erroneously determined the value of the marital share in husband's retirement plan to be $47,975.08 as of December 3, 2002.[2] The trial court erred in determining the marital share of husband's retirement account at a date other than the date of the parties' separation.

Accordingly, that part of the trial court's final order relating to the award of a portion of husband's retirement account is reversed and remanded, with direction that the trial court determine wife's marital share of husband's retirement account consistent with Code § 20-107.3(G).

<u>Affirmed in part, and reversed in part.</u>

---

[2] The record reflects that the wife presented this figure to the trial court in the form of an account summary, during the March 11, 2002 hearing.