COURT OF APPEALS OF VIRGINIA


Present: Judges Clements, Felton and McClanahan
Argued at Alexandria, Virginia


GEORGE C. PAPPAS

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 2351-03-4                       JUDGE WALTER S. FELTON, JR.
                                                    AUGUST 17, 2004
CATHERINE E. PAPPAS


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Leslie M. Alden, Judge

Dennis M. Hottell (Christopher Malinowski; Angela M. Cross;
Dennis M. Hottell & Associates, P.C., on briefs), for appellant.

Peter M. Fitzner (Matthews, Snider, Norton & Fitzner, on brief),
for appellee.


        George C. Pappas (husband) appeals the judgment of the trial court modifying the amount

of spousal support previously awarded to Catherine E. Pappas (wife) in the parties' property

settlement agreement (PSA) which was incorporated, but not merged, into their final decree of

divorce.  Husband contends that the trial court erred in considering the provisions of the PSA and

the parties' pre-PSA negotiations relating to spousal support in computing the modified support

award; that it erred in imputing income to husband; in ordering husband to pay the modified support

award retroactive to April 1, 2003 when payment of spousal support had been suspended by a prior

court order; and in ruling that it lacked authority to modify the duration of wife's support award

under the provisions of the PSA.  Finding no error, we affirm the judgment of the trial court.


---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

George C. Pappas (husband) and Catherine E. Pappas (wife) were married on June 18, 1989. No children were born of the marriage. On May 24, 2002, they entered into a property settlement agreement (PSA), which resolved all issues of spousal support and equitable distribution. The PSA was affirmed, ratified and incorporated, but not merged, into the final decree dissolving the parties' marriage.

Under the provisions of the PSA, husband agreed to pay wife $5,700 per month from December 2001 until June 2002, and thereafter $4,000 per month for twelve years and four months, unless terminated due to wife's remarriage, her habitual cohabitation analogous to marriage, or the death of either party. Pursuant to the PSA, husband received marital property valued at $35,000 and wife received assets, including the marital residence, valued at $397,585. The PSA also provided that "either party may hereafter petition any court of competent jurisdiction for an increase or decrease of spousal support and maintenance pursuant to § 20-109 . . . ."

At the time the parties entered into the PSA, husband was the President and CEO of Plesk, Inc., an information technology company, where he had been employed since June 2001 at an annual salary of $190,000. Both parties anticipated husband's employment would continue when they entered into the PSA. On December 16, 2002, husband's employment at Plesk was terminated as the result of financial difficulties experienced by his employer.

Immediately following his termination, husband began seeking comparable alternative employment in the information technology sector. Due to a poor market, employment opportunities consistent with his former level of employment were largely unavailable. Meanwhile wife, who had not been employed during the marriage, obtained employment earning approximately $46,000 annually.

On December 31, 2002, less than seven months after the entry of the final decree of divorce incorporating the parties' PSA, husband filed a motion to modify spousal support. He simultaneously filed a *pendente lite* motion to suspend the support payments, which the trial court granted on January 10, 2003.

On July 23, 2003, the trial court heard evidence *ore tenus*. Both parties presented expert testimony related to husband's job search following his loss of employment. The trial court admitted the parties' PSA into evidence, as well as evidence of the parties' pre-PSA negotiations regarding spousal support.

The trial court found that the PSA provided authority for it to determine modification of spousal support. It concluded that husband's termination of employment resulting from his employer's financial difficulties was a material change in circumstances not reasonably contemplated by the parties at the time they entered into the PSA. It also found that its authority to modify the spousal support was limited to modifying the amount of support, but not its duration; that the evidence supported an imputation of $100,000 annual income to husband; and that after considering all the factors of Code § 20-107.1(E), husband's monthly spousal support payments should be reduced from $4,000 a month to $2,500 a month, retroactive to April 1, 2003, and payable at that rate for the duration established by the parties' PSA. It denied wife's request for an award of attorney's fees. On August 6, 2003, the trial court entered a final order reflecting its decision of July 23, 2003. Husband's motion to reconsider was also denied on August 6, 2003.

ANALYSIS

I.

On appeal, we review the evidence, and all reasonable inferences fairly deducible from it, in the light most favorable to the prevailing party below. Alphin v. Alphin, 15 Va. App. 395, 399, 424 S.E.2d 572, 574 (1992). When a trial court hears the evidence *ore tenus*, its findings

are entitled to great weight and will not be disturbed on appeal unless "plainly wrong or without evidence to support it." Pommerenke v. Pommerenke, 7 Va. App. 241, 244, 372 S.E.2d 630, 631 (1988). "The determination whether a spouse is entitled to [a reduction or increase in spousal] support, and if so how much, is a matter within the discretion of the [trial] court and will not be disturbed on appeal unless it is clear that some injustice has been done." Dukelow v. Dukelow, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986).

## II.

Husband contends that the trial court erred in considering the provisions of the PSA and the parties' pre-PSA negotiations related to spousal support in modifying the spousal support award. He argues that the trial court erred because this evidence relates to past financial circumstances of the parties rather than their current financial circumstances.

Code § 20-109(B) provides in pertinent part that:

> Upon consideration of the factors set forth in subsection E of § 20-107.1, the court may increase, decrease or terminate the amount or duration of the award upon finding that (i) there has been a material change in the circumstances of the parties, not reasonably in the contemplation of the parties when the award was made . . . .

"The moving party in a petition for modification of support is required to prove both a material change in circumstances and that this change warrants a modification of support." Schoenwetter v. Schoenwetter, 8 Va. App. 601, 605, 383 S.E.2d 28, 30 (1989). "The material change in circumstances must have occurred after the most recent judicial review of the award, and 'must bear upon the financial needs of the dependent spouse or the ability of the supporting spouse to pay.'" Moreno v. Moreno, 24 Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (quoting Hollowell v. Hollowell, 6 Va. App. 417, 419, 369 S.E.2d 451, 452 (1988)). "In [modifying] spousal support, the [trial court] . . . is guided by the . . . factors that are set forth in Code § 20-107.1. When the [trial court] has given due consideration to these factors, [its]

determination will not be disturbed on appeal except for clear abuse of discretion." Collier v. Collier, 2 Va. App. 125, 129, 341 S.E.2d 827, 829 (1986).

The trial court concluded that husband's loss of employment resulting from his employer's financial difficulties was a material change in circumstances not reasonably anticipated by the parties when they entered into the PSA setting spousal support. It noted that both the PSA and the parties' pre-PSA negotiations demonstrated the parties' expectations that husband would continue to be employed at a substantial annual income. Husband conceded in his reply brief that a proper consideration of Code § 20-109(B) requires the trial court to consider this evidence in determining whether a material change in circumstances not contemplated by the parties had occurred.

Once a material change in circumstances warranting modification has been established, Code § 20-109(B) requires the trial court to consider the factors set forth in Code § 20-107.1(E) to determine the amount of the award. In reducing the amount of husband's monthly spousal support obligation, the trial court stated that it based its decision on the evidence presented, including the property and support provisions contained in the PSA, the argument of counsel, and all the factors enumerated in Code §§ 20-107.1(E) and 20-109.

Husband argues that the trial court erred in considering the PSA property and support provisions, as well as the parties' pre-PSA negotiations regarding support, in determining the amount of the modified support payments, because those matters related to the parties' past financial circumstances rather then their current financial circumstances. The trial court ruled that Code § 20-107.1(E)(7) and (13) permitted it to "consider the agreement that the parties made and the property interests that resulted from that." Code § 20-107.1(E)(7) requires the court to consider "the property interests of the parties, both real and personal, tangible and intangible."

Code § 20-107.1(E)(13), the "catch-all" provision, requires it to consider "[s]uch other factors, . . . as are necessary to consider the equities between the parties."

The PSA contained the agreed distribution of the parties' personal property, retirement accounts, marital home, provisions for life and health insurance, as well as their agreement on spousal support. The trial court considered the provisions of the PSA relevant to the original division of the parties' property in determining whether, and to what degree, modification of the existing spousal support award might be appropriate. It ruled that Code § 20-107.1(E)(13) permitted it to consider other financial factors established by the PSA. We conclude that the trial court did not err in considering the PSA, as its provisions established financial factors the court was required to consider under Code § 20-107.1(E)(7) and (13).

The PSA established the lifestyle the parties expected husband to financially maintain for wife following the dissolution of the marriage, namely the lifestyle which she was accustomed to during the marriage. Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (*en banc*) (citations omitted).

Moreover, the trial court explicitly stated that it based its modification decision not only upon the financial factors in the PSA, but also on the current financial and other circumstances of the parties as required by Code § 20-107.1. The trial court noted that it considered all of the factors in Code § 20-107.1(E). It specifically found both parties were employable. It found that husband had a college degree, and a long history of well-paid employment in the information technology industry. It found that he had a wide range of experience in sales, marketing, and executive positions. It concluded that husband "could and should be working at a job that pays $100,000" annually, and it imputed that income to him. It also found that, while wife essentially was not employed outside the home during the twelve-year marriage, she was currently employed, earning approximately $46,000 annually. This Court has previously said that in determining a

modification in spousal support, a trial court must consider the statutory factors of Code § 20-107.1, but that it is not "required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors." Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986).

We find from the record before us that the trial court properly considered the required statutory factors in its decision to modify husband's spousal support payments. We also find that the trial court did not abuse its discretion in considering the property and support provisions of the PSA in its determinations. Because the trial court based its modification of support decision on credible evidence in the record, we conclude that the trial court did not err in its modification of husband's spousal support obligations. See id.

### III.

Husband contends that the trial court erred in imputing an annual income of $100,000 to him. He argues that the evidence failed to show that he was voluntarily foregoing gainful employment.

"In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed." Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 783 (1999); see Stubblebine, 22 Va. App. at 708, 473 S.E.2d at 74. The party seeking imputation of income has the burden of proving that the other party is voluntarily underemployed or is voluntarily foregoing gainful employment. Blackburn, 30 Va. App. at 102, 515 S.E.2d at 784. Whether to impute income lies within the sound discretion of the trial court, and its decision will not be reversed unless plainly wrong or without evidence to support it. See Blackburn, 30 Va. App. at 102, 515 S.E.2d at 784 (citing Saleem v. Saleem, 26 Va. App. 384, 393, 494 S.E.2d 883, 887 (1998)).

The record contains credible evidence from which the trial court could reasonably conclude husband was voluntarily foregoing gainful employment and that his education, training and experience warranted imputing to him an annual income of $100,000. See id.

The record shows that husband possessed a college degree, had twenty years of work experience in sales and marketing, and had been employed by various technology companies as an executive. Moreover, wife presented expert testimony from a vocational rehabilitation consultant that husband was in fact employable at an annual salary between $100,000 and $175,000, and there were jobs available within the area for which husband was qualified and for which he had not applied. Husband presented evidence of his efforts to locate employment from the time he lost his job, including providing logs of his employer contacts and records of his job search. He presented evidence that positions comparable to that he held at the time the PSA was entered were scarce as a result of the downturn in the technology industry. Wife's expert testified that husband's efforts were inadequate based on the number of contacts that he had made, many of which were essentially networking contacts from his previous employment, and few of which were for actual available positions. Wife's expert also testified that husband's job search since March 2003 had not been aggressive and required "more volume." Wife's expert also testified that there were executive positions available in the area that were similar to husband's past experience in business development, marketing, and sales with annual salaries between $125,000 and $175,000. The expert opined that husband should lower his expectations and seek positions earning $100,000 annually; and that there were positions available as sales executive, account manager, and marketing director paying salaries of "$100,000 plus per year."

Based on the evidence before it, the trial court concluded, "that [husband] could and should be working in a job that pays at least $100,000," and imputed an annual income of $100,000 to husband in determining the modified spousal support award. We affirm the

- 8 -

judgment of the trial court imputing an annual income of $100,000 to husband based on the record before us.

## IV.

Husband also asserts that the trial court erred in ordering that the modified spousal support payments be made retroactive to April 1, 2003. He argues that the trial court's previous grant of his *pendente lite* motion on January 10, 2003, suspending his spousal support payments until the modification determination had been made, barred the retroactive support.

Husband argues that Code § 20-103 grants the court authority to "make any order proper . . . to enable a party to carry on a suit . . ." including petitions to modify spousal support. He asserts that the *pendente lite* order suspending his support obligation temporarily was to enable him to engage in proceedings to modify his support obligation to meet his changed financial circumstances. He argues that the court was without authority to order the modified support to be made retroactively to a period when it had suspended the support payments, arguing that any modification must be prospective from the final order disposing of the petition to modify. We disagree.

Code § 20-112 provides that a spousal support award "*may* be [retroactively] modified with respect to any period during which there is a pending petition for modification, but only from the date that notice of such petition has been given to the responding party." (Emphasis added.); see <u>Reid v. Reid</u>, 245 Va. 409, 414, 429 S.E.2d 208, 211 (1993) (holding that the trial court has authority to award spousal support retroactively to the period when the suit was pending).

The trial court's order suspending support payments temporarily, without prejudice, was not an order eliminating husband's obligation to make those payments altogether. It was simply an order suspending his requirement to make those payments until his petition for modification

had been heard, and a decision regarding modification was made.[1]  On July 23, 2003, the trial court reduced the amount of spousal support husband was required to pay wife from $4,000 monthly to $2,500 monthly, and made the modified payments retroactive to April 1, 2003, a date within the period the modification proceedings were pending.  The effect of the trial court's order temporarily suspending husband's obligation to pay spousal support did not limit the trial court's ability to order the modified support payments to be effective retroactively.

> [W]hether to make modification of a support order effective during a period when a petition is pending is entirely within the discretion of the trial court.  Its decision in this regard will not be disturbed on appeal absent an abuse of discretion.

O'Brien v. Rose, 14 Va. App. 960, 965, 420 S.E.2d 246, 249 (1992).

Because the trial court had the authority to suspend husband's payments during the period pending its ruling on modification, as well as to require him to make these payments pending its decision, we find it did not abuse its discretion in ordering the modification reducing the amount of support to be effective April 1, 2003.

Accordingly, we conclude that the trial court did not err in ordering husband to pay the modified spousal support obligation retroactive to April 1, 2003.

V.

Husband further contends that the trial court erred when it concluded that the provisions of the PSA did not permit it to modify the duration of the spousal support award.  He argues that because the PSA reserves the right to the parties to seek support modification pursuant to the provisions of Code § 20-109, the trial court had authority to modify not only the amount of the support payments, but their duration as well.  See Code § 20-109(B).

---

[1] The status of the support payments payable under the PSA from the date of the order suspending the payments to the retroactive effective date of the modified payments is not before us, and we express no opinion concerning them.

- 10 -

The PSA provides in pertinent part that:

> It is specifically agreed . . . that either party may hereafter petition any court of competent jurisdiction for an *increase or decrease* of the spousal support and maintenance, pursuant to § 20-109 of the 1950 Code of Virginia, as amended. The power, jurisdiction and authority of the court to entertain and adjudicate such a petition, pursuant to § 20-109, are expressly reserved and retained.

(Emphasis added.)

The parties do not contest that the PSA provides for a defined duration spousal support award.

Code § 20-109(B) provides that "a court may consider a modification of an award of spousal support for a defined duration upon a petition of either party filed within the time covered by the duration of the award" and that after considering the appropriate factors, "the court may *increase, decrease, or terminate* the amount or *duration* of the award" on a finding that there has been a material change of circumstances not contemplated by the parties. (Emphasis added.)

Code § 20-109(C) provides that where the parties have entered into a stipulation or contract regarding payment of spousal support made part of the final decree, "no decree or order directing the payment of support and maintenance for the spouse . . . shall be entered except in accordance with that stipulation or contract." Thus, for husband to prevail on his argument, he must establish that the trial court had authority under the PSA to alter the duration of the spousal support award.

"Support agreements that are voluntarily made by the parties are subject to the same rules of construction applicable to contracts generally." Goldin v. Goldin, 34 Va. App. 95, 107, 538 S.E.2d 326, 332 (2000) (citing Tiffany v. Tiffany, 1 Va. App. 11, 15, 332 S.E.2d 796, 799 (1985)). "'The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties

- 11 -

intended what the written instrument plainly declares.'" Wilson v. Holyfield, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1994) (quoting Magann Corp. v. Electrical Works, 203 Va. 259, 264, 123 S.E.2d 377, 381 (1962)). Where an agreement is plain and unambiguous in its terms, we will not substitute, include or ignore words to change the plain meaning of the agreement. See Southerland v. Estate of Southerland, 249 Va. 584, 590, 457 S.E.2d 375, 378 (1995).

We find no ambiguity in the plain language the parties used in the PSA establishing the right of either party to seek judicial modification of the support award. While the PSA provided each the right to "petition any court of competent jurisdiction for an *increase or decrease* of spousal support and maintenance, pursuant to § 20-109," the plain language of the PSA does not authorize the trial court to either terminate the spousal support award or to change the term of duration of the support payments. (Emphasis added.) The PSA specifically provides that payments of spousal support terminate "after 155 consecutive payments have been made, . . . if not earlier terminated as a result of one or more of the occurrences specified" in the agreement. None of the specified occurrences, namely: the death of either party, wife's remarriage or habitual cohabitation with another person in a relationship analogous to marriage, were alleged to have occurred or occurred in fact.

The trial court lacked authority to award spousal support contrary to the terms of the parties' agreement. See Pendleton v. Pendleton, 22 Va. App. 503, 507, 471 S.E.2d 783, 784 (1996). Accordingly, we find no error in the trial court's decision that it lacked authority under the terms of the PSA to modify the duration of wife's spousal support award.

VI.

Both parties seek an award of attorney's fees on appeal.

> The rationale for the appellate court being the proper forum to
> determine the propriety of an award of attorney's fees for efforts
> expended on appeal is clear. The appellate court has the
> opportunity to view the record in its entirety and determine

- 12 -

whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996).

Reviewing the record of the proceedings as a whole, we conclude that each party should be responsible for their respective attorney's fees incurred on appeal.

CONCLUSION

For the above reasons, we conclude that the trial court did not err in modifying the spousal support award by considering the parties' PSA and pre-PSA negotiations or in imputing $100,000 annual income to husband. We also conclude that the trial court did not err in making the modified spousal support award retroactive to April 1, 2003, or in concluding that it was barred from modifying the duration of the award. Accordingly, we affirm the judgment of the trial court.

Affirmed.